UNITED STATES, Appellee,

v.

Steven B. THOMPSON, Staff Sergeant,
U.S. Army, Appellant.

No. 98–0182.
Crim.App. No. 9402089.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 5, 1998.

Decided May 6, 1999.

COX, C.J., delivered the opinion of the Court, in which SULLIVAN, CRAWFORD, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Captain Marc D.A. Cipriano* (argued); *Lieutenant Colonel Michael L. Walters, Major Leslie A. Nepper,* and

*Captain Mary J. Bradley* (on brief); *Lieutenant Colonel Adele H. Odegard.*

For Appellee: *Captain Kelly R. Bailey* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch, III,* and *Captain Elizabeth N. Porras* (on brief); *Lieutenant Colonel Eugene R. Milhizer.*

Chief Judge COX delivered the opinion of the Court.

Appellant was convicted, by a general court-martial composed of officer and enlisted members, of rape, making false official statements (5 specifications), dereliction of duty, and violation of a lawful general regulation.[1]

Appellant first claims that the evidence in this case was not legally sufficient to convict him, as an aider and abettor, of rape. *See* Arts. 77 and 120, Uniform Code of Military Justice, 10 USC §§ 877 and 920, respectively. Secondly, he asks us to reverse his conviction because the military judge denied a challenge for cause against a court member who expressed views that senior servicemembers should be held accountable for their subordinates' illegal actions.[2] *See* 49 MJ 49 (1998).

### I—THE RAPE CHARGE

■ Legal sufficiency is determined by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 MJ 324 (CMA 1987).

Viewing the record in the light most favorable to the prosecution, the following facts are revealed: On the afternoon of February 14, 1994, appellant and one of his friends, Sergeant (SGT) Holland, and the victim, Private First Class (PFC) K, who was then 20 years of age, were playing a drinking game in appellant's barracks room. Appellant was the barracks supervisor that day. They all became intoxicated, but PFC K became especially intoxicated and passed out.

SGT Timmons, who was also a friend of appellant, arrived at appellant's room during the drinking game. SGT Timmons testified that, while appellant was in the room, SGT Holland suggested to him that he have sex with PFC K. At that point, SGT Timmons looked at appellant, since he knew appellant and PFC K had previously engaged in "recreational" sex. According to SGT Timmons, appellant said and did nothing.

SGT Timmons then asked appellant if he could borrow a condom. According to SGT Timmons, appellant told him that he did not have any, so SGT Timmons had to get one from his own room. Appellant, in contrast, testified that he believed SGT Timmons was on his way to visit his own girlfriend, so he told Timmons to take one from his "shrunk" or "shrank."[3] Appellant then left the room to take a phone call, during which time SGT Timmons engaged in intercourse with the then-passed-out PFC K.

When appellant returned to his room, all had left. PFC K had become ill, and SGT Timmons had taken her to her room. An ambulance was called, and PFC K was taken to the hospital, where it was determined that her blood alcohol level was 0.383 grams of alcohol per 100 milliliters of blood. A government expert, Doctor Ryan, testified that blood alcohol levels of 0.4 "or higher [are] the most common area of lethality."

---

1. In violation of Articles 120, 107, and 92, Uniform Code of Military Justice, 10 USC §§ 920, 907, and 892, respectively. Appellant was sentenced to forfeitures of $550 pay per month for 24 months, reduction from E–6 to E–1, 24 months' confinement, and a bad-conduct discharge. The convening authority approved the sentence as adjudged, except that he suspended the last 6 months of confinement for a period of 18 months. The Court of Criminal Appeals affirmed both the findings and sentence in an unpublished opinion.

2. This case was argued at The Citadel, Charleston, South Carolina, as part of the Court's Project Outreach. *See* 38 MJ 136, 137 n. 1 (CMA 1993).

3. The court reporter variously transcribed the references to this piece of furniture as a "shrunk" or "shrank." Presumably, the references are to a "Schrank," the German word for "cupboard, locker, cabinet, bookcase, press, wardrobe." *See* THE NEW CASSELL'S GERMAN DICTIONARY 412 (1958).

Later that evening, when SGT Timmons found out that he was being sought by authorities, he hid in his room. He also asked appellant to bring PFC Lewis to his room, since Lewis had seen Timmons with PFC K. In appellant's presence, SGT Timmons asked Lewis not to mention his name or to state that he had seen them together.

Appellant then escorted Timmons to the Staff Duty Noncommissioned Officer (SDNCO). In appellant's presence, SGT Timmons told the SDNCO that he did not know with whom PFC K had been partying, and that he had found her unconscious in the dayroom and taken her back to her room. During the questioning, appellant denied knowing PFC K, her age, or what had happened. At trial, he explained that he was afraid of potential disciplinary actions resulting from the events and his status as barracks supervisor.

In accordance with his pleas, appellant was convicted of making the false official statements and of violating a regulation by providing alcohol to someone under the legal drinking age. Contrary to his pleas, he was convicted of the rape by aiding and abetting, and of dereliction of duty for failing to ensure PFC K's safety.

■ Before us, appellant first argues that, without some evidence of an affirmative act and criminal purpose or design, his conviction based on aiding and abetting cannot stand. Appellant reasons that mere knowledge of the victim's intoxication and the loan of a condom to the perpetrator do not constitute legally sufficient evidence of an affirmative act or a criminal purpose.

The Government, on the other hand, relies upon two alternative aiding and abetting theories: either appellant invited and encouraged the perpetrator, SGT Timmons, to engage the victim in sex; or appellant witnessed the event, or knew it was about to happen, and breached his duty to interfere. Indeed, the Court of Criminal Appeals found that appellant's failure to act to prevent the rape, in light of his duty as barracks supervisor, was a significant factor contributing to his aiding and abetting the rape. *See* unpub. op. at 2.

■ For an accused to be a principal under Article 77, and thus to be guilty of the offense committed by the perpetrator, he must (1) "assist, encourage, advise, instigate, counsel, command, or procure another to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense"; and (2) "share in the criminal purpose of design." Para. 1b(2)(b), Part IV, Manual for Courts–Martial, United States, 1984.

Our case law has generally interpreted Article 77 to require an affirmative step on the part of the accused. *See, e.g., United States v. Bivins,* 49 MJ 328 (1998); *United States v. Shearer,* 44 MJ 330, 335 (1996); *United States v. Pritchett,* 31 MJ 213, 219 (CMA 1990).

The evidence developed at trial clearly supports appellant's conviction. First, appellant participated in getting PFC K intoxicated to such an extent that she passed out and was helpless to resist the intercourse. Second, there was evidence that appellant knew SGT Timmons was going to have intercourse with PFC K, and that he encouraged the rape by not dissuading Timmons when he looked to appellant for approval. Third, by his own admission, appellant provided SGT Timmons with a condom. Collectively, this evidence leads to the inescapable conclusion that appellant encouraged and assisted in the event. The Court of Criminal Appeals did not err when it concluded that the evidence was both factually and legally sufficient.

*II—THE CHALLENGE FOR CAUSE OF THE COURT MEMBER*

■ Turning to the question of whether the military judge erred by denying the defense challenge for cause, we review for abuse of discretion. *See United States v. McLaren,* 38 MJ 112, 118 (CMA 1993), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994). A military judge receives "great deference" regarding questions of actual bias and less deference for questions of implied bias. *See United States v. Rome,* 47 MJ 467, 469 (1998).

The challenge for cause against the court member, Colonel Pierce, was based on his affirmative response to a question addressed to the panel as a whole. Counsel had inquired whether any of the members would be predisposed to think less of appellant because he was drinking with a private in the barracks. During individual voir dire, Colonel Pierce reiterated that he did not approve of a noncommissioned officer (NCO) drinking with a private. Colonel Pierce also expressed his concern that an NCO would have a personal relationship with a private.

When asked whether an NCO must accept total responsibility for what happens within his or her area of control or presence, the Colonel responded:

I don't know any other way our military system will work. It has worked that way for a long time. If I remember correctly, General MacArthur hung a Japanese general, named Yamashida [sic], over the atrocities that happened in the Philippines. And there was probably no way on earth that you could have expected General Yamashida [sic] to control the deteriorated situation which he had, however, it was still his responsibility as the senior commander, and he was found guilty of not exercising that control.

Colonel Pierce also told the military judge that he would put his own opinions aside and judge appellant based on the evidence before him. He also indicated his willingness to apply the law as directed by the judge.

Appellant argues that Colonel Pierce's responses show that he had a predisposition that might prejudice him and that the military judge should have excused the Colonel under the liberal grant standard that this Court has repeatedly applied to challenges for cause. *E.g., United States v. Youngblood,* 47 MJ 338, 341 (1997).

The military judge declined and, in a colorful but disjointed ruling, said:

All right. I would like the record to reflect that Colonel Pierce is probably the oldest living colonel I've ever seen. I don't

know how old he is, but he's an old guy. Secondly, he's a very soft spoken and mild mannered guy and he's an engineer, for whatever that's worth, and he has at least one tour in Vietnam. Some soldiers, you get a warm and fuzzy feeling that what they are trying to do is screw you. Other times you get a warm and fuzzy feeling that what you've got is an honest guy who is trying to follow the rules. He also has a Good Conduct medal, and I don't know a lot of commissioned officers with Good Conduct [M]edals who want to screw soldiers.[4] I have met some without Good Conduct medals that do. And I am telling you that you wouldn't have convinced me, even under a liberally challenged standard, to excuse Colonel Pierce, but it's even stronger in my mind that I deny that challenge given his impression. Yes, he speaks with a little bit of a southern accent, and yes, he doesn't look like he's out ready to lead a march on Sigon [sic] any time soon, but the guy gives you the impression in his word choices, and what he says is that, you know, I'll tell you whatever you want to know and if you want to ask me this question, I'll tell you straight up, and I don't care whether you like the answer or not. That's the impression I get. He's honest. He's forthright. He's candid. And if there was any thought that he would not be impartial, I'd kick him off in a heartbeat, and I don't get that feeling. And I hope—and what he has done for you is he has told you that he is one soldier who does understand what the rules are. At least you have the benefit of a great peremptory challenge, if that's what you want to do. But a challenge for cause? I feel responsibility for the justice system that we do not kick off an officer who tells you what the rules are and that he'll apply them and that he will also follow the law and not go with his gut, and your challenge for cause is denied based on that.

While the military judge might have taken a more cautious approach here and avoided

---

4. Presumably, Colonel Pierce had been an enlisted man at some point in his career, as only enlisted members are eligible for the Army Good Conduct Medal. Para. 4–2, Army Regulation 600–8–22 (25 February 1995).

this issue altogether by granting the requested challenge[5], his denial of the challenge does not rise to an abuse of discretion. We have carefully reviewed the entire voir dire of the court member, and we conclude, as did the military judge, that it supports the military judge's finding that the member was not biased, prejudiced, or partial. Evidence was admitted that he could follow the military judge's instructions on the law. Under these circumstances, there is no facet of the judge's ruling on which to base a conclusion that he abused his discretion.

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

5. The military judge could have avoided the issue by following his own advice:

> [MJ addressing the TC]: What do you think about the fact that challenges should be liberally granted, and why shouldn't we, in light of that rule and a fair trial, just say, hey, why screw with this, challenges should be liberally granted ...? Forget the specifics of this trial and let's think about justice with a capital J. What do you think?
> [Trial counsel has no response.]
> Let me ask you a harder question. Why don't you change places with Sergeant Thompson and ask you how much confidence you would have in this court-martial if Major [M] were sitting here. Challenge for cause against Major [M] is granted.