**UNITED STATES**

v.

**Airman First Class Stephen P. GOSSELIN II, United States Air Force.**

**ACM S30200.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 31 July 2002.

23 Nov. 2004.

Appellate Counsel for Appellant: Major Terry L. McElyea and Captain Diane M. Paskey.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Robert V. Combs, and Lieutenant Colonel Robert L. Marconi.

Before STONE, GENT, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

SMITH, Judge:

The appellant was tried at Spangdahlem Air Base, Germany, by a military judge sitting as a special court-martial. In accordance with his pleas, the appellant was convicted of various drug offenses, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for 30 days, and reduction to the grade of E–1.

On appeal, the appellant challenges the providence of his plea to the wrongful introduction of mushrooms containing the hallucinogenic psilocybin, a Schedule I controlled substance, onto Spangdahlem Air Base. For the reasons set forth below, we conclude the appellant's plea was provident and affirm.

### Background

On a Friday night at the end of August 2001, the appellant and another Spangdahlem-based airman, Airman First Class (A1C) Etzweiler, were socializing at the Noncommissioned Officer's (NCO) Club on base. A1C Etzweiler expressed an interest in driving to Maastricht, the Netherlands, the next morning to buy some mushrooms and asked the appellant to go with him. A1C Etzweiler apparently wanted the appellant to help navigate the route to Maastricht and the appellant agreed to go. During the providence inquiry, the appellant summarized the Friday night discussion this way:

> It was something along the lines of like well I'm going up to Maastricht tomorrow. I don't have anybody else to go with. He [A1C Etzweiler] knew that I had been up to Eindhoven which is on the same autobahn up there. I had gone up there with a few of my friends a couple of months before. So he knew that I knew how to get to Maastricht because if you've ever been up to Eindhoven or anything like that there are signs right off the autobahn and

right on the autobahn that say Maastricht this exit. So I told him I could get him there and told him I knew the direction and all that.

The appellant also saw the trip as an opportunity to buy a dragon statue that he expected would be cheaper in Maastricht than those he had seen for sale on the base.

The next morning, the two drove to Maastricht in A1C Etzweiler's car and visited two or three "head shops" before A1C Etzweiler purchased the mushrooms. The appellant described in some detail the transaction he observed. The two drove directly back to Spangdahlem. The appellant explained to the military judge that he did not know where the mushrooms were in the car, but he said he knew the mushrooms were in the car when they reached the gate. The re-entry onto Spangdahlem was uneventful. That evening, the appellant, A1C Etzweiler, and a couple of other airmen used some of the mushrooms. When asked by the military judge if the mushrooms he used looked like what A1C Etzweiler had purchased in Maastricht that day, the appellant responded, "Yes, yes. Roughly the same bag and everything."

The military judge's inquiry on the wrongful introduction specification was very thorough (covering 22 pages of the 100–page trial transcript). The appellant was charged as a principal for wrongfully introducing the mushrooms onto the base, and it is very clear from the record that the military judge wanted to ensure he, counsel, and the appellant shared a common understanding of the basis for the appellant's vicarious liability. The judge recessed the trial twice (once in conjunction with lunch) to allow the appellant and his counsel to discuss it among themselves. After the second recess, the defense counsel announced that his client was pleading guilty "on the aiding theory," and described the acts that established the aid and encouragement provided by the appellant. The military judge did not ask the appellant to explain his own understanding of the applicable legal theory of liability, nor did he ask the appellant whether he concurred with his counsel's averment. The appellant now contends that there was no factual basis to support the theory that he aided and abetted A1C Etzweiler in committing the crime.

### The Providence Inquiry

■ A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996). "Pleas of guilty should not be set aside on appeal unless there is 'a "substantial basis" in law and fact for questioning the guilty plea.'" *Id.* at 375 (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)).

The nature of military guilty plea practice has developed from the fundamental notion that a plea inquiry should have the "advantage of settling once and for all that he [the appellant] is the man who did what he is charged with doing." *Uniform Code of Military Justice: Hearings on H.R. 2498 Before the Comm. of Armed Services*, 81st Cong., 1st Sess., 1054 (1949) (testimony of Mr. Felix Larkin, Assistant General Counsel, Office of the Secretary of Defense). *See also United States v. Chancelor*, 36 C.M.R. 453, 1966 WL 4510 (C.M.A.1966). Our superior court has emphasized that:

> The military justice system takes particular care to test the validity of guilty pleas because the facts and the law are not tested in the crucible of the adversarial process. Further, there may be subtle pressures inherent to the military environment that may influence the manner in which servicemembers exercise (and waive) their rights. The providence inquiry and a judge's explanation of possible defenses are established procedures to ensure servicemembers knowingly and voluntarily admit to all elements of a formal criminal charge.

*United States v. Pinero*, 60 M.J. 31, 33 (C.A.A.F.2004).

Article 45(a), UCMJ, 10 U.S.C. § 845(a), does not permit a court to accept an improvident plea. Rule for Courts–Martial 910(e) requires the military judge to make an inquiry of the accused to determine if a factual basis for the plea exists. The inquiry must also include an explanation of the elements of the offenses charged. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002); *United*

*States v. Care,* 40 C.M.R. 247, 253, 1969 WL 6059 (C.M.A.1969). A military judge need not explore every rabbit trail in the course of an inquiry, but a bare bones inquiry does little to establish an adequate factual basis for the military judge (or reviewing authorities). If the "factual circumstances as revealed by the accused himself objectively support that plea," the factual predicate is established. *United States v. Faircloth,* 45 M.J. 172, 174 (C.A.A.F.1996) (quoting *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A. 1980)). To that end, "[i]t is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty." *Jordan,* 57 M.J. at 238 (citing *United States v. Outhier,* 45 M.J. 326, 331 (C.A.A.F.1996)). In short, "[i]n the military, the providence of a guilty plea rests on *what the accused actually admits on the record.*" *United States v. Eddy,* 41 M.J. 786, 791 (A.F.Ct.Crim.App.1995).

### Article 77, UCMJ, 10 U.S.C. § 877, Principals

To be criminally liable as a principal under Article 77, UCMJ, 10 U.S.C. § 877, one who is not the perpetrator must "[a]ssist, encourage, advise, instigate, counsel, command, or procure another to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense" and "[s]hare in the criminal purpose o[r] design." *Manual for Courts–Martial, United States (MCM),* Part IV, ¶ 1b(2)(b) (2002 ed.). Article 77, UCMJ, has been interpreted to require an affirmative step on the part of the appellant. *United States v. Thompson,* 50 M.J. 257, 259 (C.A.A.F.1999). *See also United States v. Shearer,* 44 M.J. 330 (C.A.A.F.1996); *United States v. Pritchett,* 31 M.J. 213 (C.M.A.1990); *United States v. Burroughs,* 12 M.J. 380 (C.M.A.1982). Mere presence at the scene of a crime does not make one a principal. *MCM,* Part IV, ¶ 1b(3)(b); *United States v. Clark,* 60 M.J. 539, 545 (A.F.Ct.Crim.App.

2004); *Pritchett,* 31 M.J. at 217; *Burroughs,* 12 M.J. at 382–83.

The "classic" interpretation of the aiding and abetting rule of law is generally attributed to Judge Learned Hand, cited by, among many others, the Supreme Court and our superior court. *See Pritchett,* 31 M.J. at 217; *United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982). In *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938), Judge Hand opined that an accused must "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *See also Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

Our superior court has also emphasized that "[a]ll that is necessary is to show some affirmative participation which at least encourages the principal to commit the offense in all its elements as defined by the statute." *Pritchett,* 31 M.J. at 216 (quoting *United States v. Knudson,* 14 M.J. 13, 15 (C.M.A. 1982)). "What is required on the part of the aider is sufficient knowledge and participation to indicate that he knowingly and willfully participated in the offense in a manner that indicated he intended to make it succeed." *Pritchett,* 31 M.J. at 217 (quoting *Raper,* 676 F.2d at 849).

### Analysis

■ The providence inquiry in the present case was not bare bones. The military judge repeatedly pressed the appellant for as much detail as he could recall.[1] An adequate factual basis for the plea is evident from what the appellant actually admitted and explained on the record.

The appellant shared A1C Etzweiler's criminal purpose and took affirmative steps to assist him in the introduction of mushrooms onto Spangdahlem Air Base. The appellant knew Maastricht was a source for drugs; in the inquiry and the stipulation of

---

1. Although the appellant was forthcoming throughout the inquiry, the record also reflects a "conscious choice by [the appellant] to limit the nature of the information that would otherwise be disclosed in an adversarial contest." *Jordan,* 57 M.J. at 238–39. For example, the appellant tended to shape his explanation around the shopping opportunity that the Maastricht trip provid-

ed him. That tendency caused the military judge, more than once, to specifically ask what the appellant understood the original purpose of the trip to be. Three times the military judge instructed the appellant that mere presence at the scene of a crime was not enough to establish vicarious liability. The record reflects no misunderstanding on that point.

fact, the appellant admitted he and two other airmen used marijuana that one of them had traveled to Maastricht to buy. The appellant and A1C Etzweiler used marijuana together at least twice during the summer of 2001. That relationship, coupled with the appellant's familiarity with the route to Maastricht, presumably led A1C Etzweiler to ask the appellant to join him on the trip in early September 2001. The trip to Maastricht occurred on the same day a fireworks show was to be held in the town of Bernkastel, a festival the appellant and his friends had planned to attend since mid-summer. It is abundantly clear from the providence inquiry that the appellant knew A1C Etzweiler's purpose in traveling to Maastricht was to buy mushrooms. The appellant did not attempt to discourage A1C Etzweiler nor did he decline to accompany him, either during the discussion at the NCO Club or the next morning when A1C Etzweiler showed up at the appellant's dormitory room to see if he was still willing to go. Although the record is not clear as to exactly how much navigation assistance the appellant provided, it is obvious he agreed to provide assistance.

Once in Maastricht, the appellant went to two or three "head shops" to find the mushrooms and the dragon statue the appellant wanted to buy. The appellant purchased a statue, but A1C Etzweiler was still in search of a mushroom seller. The appellant accompanied him to another shop where the transaction was accomplished. Without stopping, they drove directly back to Spangdahlem Air Base where both airmen lived in the dormitories. The appellant admitted he knew the mushrooms were in the car when they arrived at the gate to the base. He also admitted he was pleading guilty because he knew the mushrooms were illegal when they were introduced onto the base and because he was a party to their introduction.

The appellant characterizes the latter portion of the inquiry, which included instructions from the military judge on all theories of vicarious liability (including co-conspirators) and the post-recess explanation from defense counsel that his client was pleading under an "aiding theory," as defective. As to the instructions, it is clear to us the military judge wanted to clarify what he understood the applicable legal theory of liability to be (aiding and abetting), against which he would apply the facts established in the course of the inquiry. The appellant contends that his counsel's explanation of the plea was an insufficient basis to support the plea, especially since he was not asked to restate or ratify it. There is no requirement for the appellant to attempt his own articulation of the legal theory or to ratify his counsel's representation. *See Outhier*, 45 M.J. at 331 ("[m]ere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea"). By that point in the inquiry, the appellant had already supplied a sufficient factual basis.

### Conclusion

We do not find a substantial basis to question the appellant's guilty plea. The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.