UNITED STATES, Appellee

v.

Stephen P. GOSSELIN II, Airman First Class
U.S. Air Force, Appellant

No. 05-0255

Crim. App. No. S30200

United States Court of Appeals for the Armed Forces

Argued November 1, 2005

Decided February 24, 2006

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and EFFRON and BAKER, JJ., joined.  CRAWFORD, J.,
filed a dissenting opinion.

Counsel

For Appellant:  Captain John S. Fredland (argued); Colonel
Carlos L. McDade, Major Sandra K. Whittington, and Captain
Christopher S. Morgan (on brief); Captain Diane M. Paskey.

For Appellee:  Captain Nicole P. Wishart (argued); Lieutenant
Colonel Gary F. Spencer, Major Jin-Hwa L. Frazier, and Major
John C. Johnson (on brief); Lieutenant Colonel Robert V. Combs.

Military Judge:  Thomas Pittman


**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

Airman First Class Stephen P. Gosselin II pled guilty to using psilocybin mushrooms, using and distributing marijuana, and wrongfully introducing psilocybin mushrooms onto Spangdahlem Air Base, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). Gosselin was sentenced to confinement for thirty days, a reduction in grade to E-1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and the Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Gosselin, 60 M.J. 768 (A.F. Ct. Crim. App. 2004).

This court will set aside a guilty plea where it determines that there is a "substantial basis in law and fact for questioning the guilty plea." United States v. Milton, 46 M.J. 317, 318 (C.A.A.F. 1997) (quotation marks omitted). In accepting Gosselin's guilty plea to the offense of introducing mushrooms onto Spangdahlem Air Base, the military judge relied on an "aiding and abetting" theory of liability. Under that theory Gosselin was required to admit to facts showing that he intentionally and knowingly assisted or participated in the commission of the offense by the primary actor, Airman Etzweiler. We granted review to determine whether Gosselin's

providence inquiry established that he was guilty of aiding and abetting Etzweiler in his commission of the offense.[1]

<u>BACKGROUND</u>

The sole issue before the Air Force Court of Criminal Appeals and this court is the providence of Gosselin's guilty plea to the offense of wrongful introduction of psilocybin mushrooms onto Spangdahlem Air Base.  The military judge conducted an extensive providence inquiry into this offense and recessed the inquiry on two occasions to allow Gosselin the opportunity to consult with his attorney.

The military judge first listed the elements of the "introduction" offense and provided Gosselin the opportunity to explain why he was guilty of the offense.  Gosselin initially stated that he went with Etzweiler to Maastricht[2] where he "had a good idea" Etzweiler intended to purchase mushrooms.  He testified that he agreed to go to Maastricht with Etzweiler because he wanted to purchase a dragon statue there.

---

[1] We granted review of the following issue:

> WHETHER APPELLANT'S GUILTY PLEA TO
> SPECIFICATION 4 OF THE CHARGE WAS
> IMPROVIDENT WHERE, DURING THE PROVIDENCE
> INQUIRY, APPELLANT DID NOT PERSONALLY ADMIT
> TO AIDING OR ABETTING ANOTHER AIRMAN IN THE
> COMMISSION OF THE OFFENSE CHARGED.

[2] Maastricht is located in the Netherlands.

3

Once in Maastricht, the two went into some "head shops" where Gosselin looked for and purchased a dragon statue. After Gosselin purchased his dragon, he accompanied Etzweiler while he went into "head shops" looking for mushrooms. In one shop Gosselin observed the cashier hand a bag to Etzweiler and he testified that he knew the bag contained mushrooms. The two of them then left the store and returned to the base in Etzweiler's car with Etzweiler driving.

The military judge asked Gosselin to explain specifically how he introduced the mushrooms onto the base. Gosselin responded that he got into the car with Etzweiler knowing that he had mushrooms in his possession and went back onto the base. He stated that he knew the mushrooms were in the car when they went onto the base because they made no stops and he did not see Etzweiler put anything into his mouth. He also told the military judge that he did not know what Etzweiler intended to do with the mushrooms, but that later that evening they used them.

When the military judge asked Gosselin if he was guilty as an accomplice and was knowingly involved in bringing the mushrooms onto the base, Gosselin agreed. Gosselin noted that he could have avoided being a party to the introduction of the mushrooms onto the installation by telling Etzweiler to get rid of them, by refusing to accompany him to Maastricht, or by

4

reporting to the gate guard that the drugs were in the car. At that point the military judge recessed the hearing for lunch but directed the trial counsel and defense counsel "to look at . . . whether on these facts that the offense of wrongful introduction is completed."

Upon return from the recess, the military judge renewed his questioning of Gosselin in regard to the "introduction" offense. Gosselin provided additional background facts during this inquiry and stated that while the two of them were at the Non-Commissioned Officers Club a few evenings before the trip, Etzweiler had told him that he wanted to go to Maastricht to purchase mushrooms. Gosselin did not discuss the proposed mushroom purchase with Etzweiler further, but told him that he wanted to go to Maastricht to purchase a dragon statue. Etzweiler knew that Gosselin had been to that area before and Gosselin told Etzweiler that he could get him there.

The morning of the trip, Etzweiler asked Gosselin if he was still up for going and Gosselin said that he was. Gosselin testified that on the ride to Maastricht they did not talk about buying mushrooms but "just basically listened to the radio the whole way up." Gosselin did not testify that he actually provided Etzweiler directions during the trip to Maastricht.

In response to further questions from the military judge, Gosselin repeated his description of their time in Maastricht,

describing again how he observed Etzweiler purchase what he believed to be mushrooms while he looked around the shop and how they then returned to the base. He also repeated that there was no discussion about the mushrooms on the trip back to the base and that the decision to use the mushrooms did not occur until much later that evening after the mushrooms had already been introduced onto the base.

Following this discussion between Gosselin and the military judge, the military judge instructed Gosselin on various theories of accomplice liability. He told Gosselin that if there was an issue of vicarious liability of a co-conspirator, he would need to know that there was an agreement or meeting of the minds between Gosselin and Etzweiler to bring the mushrooms back on base and that there was an act in furtherance of the meeting of the minds. If the theory was aiding and abetting, then the military judge stated he would need to know how it was that Gosselin encouraged, counseled, commanded, procured, aided or abetted in some way the commission of the offense. The military judge stated that he needed Gosselin to "specify it for me in your own words." Following this exchange the defense counsel requested a recess.

Upon returning from this second recess the military judge asked the defense counsel if he had looked at the issue. Defense counsel responded that he had and that he could provide

the military judge with a legal theory.  The military judge, apparently having difficulty finding the requisite facts for a provident plea, informed the defense counsel, "That would be helpful."

The defense counsel informed the military judge that Gosselin was pleading guilty under an aiding and abetting theory.  He then articulated the facts on which the theory relied, specifically:  Gosselin agreed to go to Maastricht knowing that Etzweiler intended to purchase mushrooms; Gosselin did nothing to discourage this; Gosselin indicated he had been there before and could help navigate; Gosselin did help navigate on the way there;[3] Gosselin voluntarily went into the shop where he knew Etzweiler intended to purchase the mushrooms; and Gosselin knew Etzweiler bought the mushrooms and knew they were in the car and yet Gosselin said nothing to the gate guard when they entered the base.

The military judge indicated his agreement with defense counsel's aiding and abetting theory and stated that Etzweiler "needed your client's assistance in being able to get to this

---

[3] Gosselin never admitted that he helped Etzweiler navigate to Maastricht and the only reference to this in the record came from the defense counsel.

place and locate where Maastricht was so he could make this purchase.  So I think that's a very relevant fact."

## DISCUSSION

Although Gosselin was not the primary actor in the offense of introducing mushrooms onto Spangdahlem Air Base, he may be held liable as a principal to the crime if he "aids, abets, counsels, commands, or procures [its] commission."  Manual for Courts-Martial, United States pt. IV, para. 1.b.(1) (2005 ed.)(MCM).  Gosselin's defense counsel informed the military judge that Gosselin was pleading guilty under an aiding and abetting theory and the military judge accepted the plea on that basis.

This court has stated that the elements of aiding and abetting an offense under Article 77, UCMJ, 10 U.S.C. § 877 (2000), are:

> (1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the commission of the offense.

United States v. Pritchett, 31 M.J. 213, 217 (C.M.A. 1990) (citations omitted).  This court has also found:

> For an accused to be a principal under Article 77, and thus to be guilty of the offense committed by the perpetrator, he must (1) "assist, encourage, advise, instigate, counsel, command, or procure another to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense"; and (2) "share in the criminal

8

> purpose of design." Para. 1b(2)(b), Part IV, Manual for Courts-Martial, United States, 1984.
>
> Our case law has generally interpreted Article 77 to require an affirmative step on the part of the accused.

United States v. Thompson, 50 M.J. 257, 259 (C.A.A.F. 1999).

If the admissions made by Gosselin at his providence inquiry do not establish each of the four elements discussed in Pritchett, we must set aside his guilty plea. See United States v. Jones, 34 M.J. 270, 272 (C.M.A. 1992). The record established that Gosselin knew that Etzweiler wanted to go to Maastricht to purchase mushrooms. Gosselin agreed to accompany Etzweiler because he wanted to purchase a dragon statute. While Gosselin told Etzweiler that he could provide directions to Maastricht, the record is silent as to whether he provided any assistance. Gosselin knew that Etzweiler purchased mushrooms in Maastricht and that he put them in the car. Gosselin then rode back onto Spangdahlem Air Base in Etzweiler's car with the mushrooms in the car.[4]

Although it appears that the military judge struggled to solicit testimony as to Gosselin's intent to "share in the

---

[4] Gosselin's presence in the car, by itself, is not sufficient to establish guilt. "Mere inactive presence at the scene of the crime does not establish guilt. . . . The law requires concert of purpose or the aiding or encouraging of the perpetrator of the offense and a conscious sharing of his criminal intent." United States v. Borroughs, 12 M.J. 380, 382-83 (C.M.A. 1982) (citations omitted).

criminal purpose" of introducing the mushrooms onto the base, he was not successful. Nor does the record reflect that Gosselin participated in Etzweiler's act of introducing mushrooms onto the military installation by taking an affirmative step.

In finding that Gosselin was guilty of aiding and abetting, the military judge relied on the admission by Gosselin's defense counsel that Gosselin helped Etzweiler navigate on the trip to Maastricht, noting that this was "a very relevant fact." The Court of Criminal Appeals conceded that the record was not clear as to exactly how much navigation assistance Gosselin provided but noted that it was "obvious he agreed to provide assistance". 60 M.J. at 771. We find nothing in the record that establishes that Gosselin provided any navigational assistance. The statements from his defense counsel that he did so are not sufficient to establish this fact where Gosselin never personally adopted those statements.

Furthermore, even if we were to assume that the record supports the fact that Gosselin provided navigational assistance to Maastricht, that fact may have established only that Gosselin provided assistance for the offense of purchasing the mushrooms under an aiding and abetting theory.[5] It does not, however, translate into an affirmative act for the later separate offense

---

[5] Gosselin was not charged in regard to the purchase of the mushrooms.

of introduction of the mushrooms onto the base.  There was no evidence or suggestion that Gosselin assisted Etzweiler in navigating back to Spangdahlem Air Base and there was no discussion as to what Etzweiler was planning to do with the mushrooms.

We note that during the providence inquiry, in responding to a question from the military judge, Gosselin agreed that he was guilty as an accomplice because he "was a party" to the introduction of the drugs onto the military base.  Gosselin further agreed that he was "knowingly involved", even though he was not the primary actor.  These conclusory responses to the military judge's questions regarding his liability as an accomplice are not sufficient for us to find Gosselin's plea provident.  Conclusions of law alone do not satisfy the requirements of Article 45, UCMJ, 10 U.S.C. § 845 (2000), and Rule for Courts-Martial 910(e).  United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002) ("It is not enough to elicit legal conclusions.  The military judge must elicit facts to support the plea of guilty.").  This is especially true where, as here, these responses are not supported by the factual statements made by Gosselin elsewhere in the providence inquiry.

The Government also argues that Gosselin had a duty to interfere in the commission of the "introduction" offense and

11

his failure to do so makes him a party to the offense. MCM pt.

IV, para. 1.b.(2)(b)(ii) provides:

> In some circumstances, inaction may make one liable as a party, where there is a duty to act. If a person (for example, a security guard) has a duty to interfere in the commission of an offense, but does not interfere, that person is a party to the crime if such a noninterference is intended to and does operate as an aid or encouragement to the actual perpetrator.

The military judge, in a conclusory manner, solicited

admissions from Gosselin that he had a duty to interfere and

inform the gate guard that Etzweiler had mushrooms in the car.

Gosselin responds that he held no special position which would

create a duty to interfere nor was he Etzweiler's supervisor.

We need not determine whether a duty existed in this case

because even if there was a duty, it was not established that

Gosselin's noninterference was intended to act as aid or

encouragement to Etzweiler. See United States v. McCarthy, 11

C.M.A. 758, 761-62, 29 C.M.R. 574, 577-78 (1960) (noting that to

establish liability for aiding and abetting a crime "it is not

sufficient to demonstrate mere presence at the scene of the

crime" and concluding that where the accused did not take any

affirmative action to assist in the commission of a larceny,

"failure to take affirmative measures to prevent the commission

of the larceny does not in any way establish guilt as a

principal").

12

The providence inquiry failed to establish that Gosselin intended to facilitate Etzweiler's introduction of mushrooms onto a military installation or assisted or participated in the commission of the offense. See Pritchett, 31 M.J. at 217. Because we find a "substantial basis in law and fact for questioning the guilty plea" Specification 4 of the Charge must be reversed. Milton, 46 M.J. at 318 (quotation marks omitted).

## DECISION

The decision of the Air Force Court of Criminal Appeals is reversed. The finding of guilty of Specification 4 of the Charge and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals. That court may either dismiss Specification 4 of the Charge and reassess the sentence, or it may order a rehearing.

United States v. Gosselin II, No. 05-0255/AF

CRAWFORD, Judge (dissenting):

Recently the Supreme Court ruled, "[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." Bradshaw v. Stumpf, 125 S. Ct. 2398, 2405 (2005). In the present case, the record of trial reads:

> MJ: I take it that you talked to your attorney about accomplice liability. In other words even though you weren't the one who actually brought them on to the military installation, that you were a party to that. Is that why you're pleading guilty to this offense?
>
> ACC: Yes, Sir.
>
> MJ: Because you were knowingly involved in bringing the mushrooms on to the base?
>
> ACC: Yes, Sir.

Under the Bradshaw standard, this constitutes a provident plea. As members of a lower court, we are bound to follow the precedent set forth by our superior court. The majority fails to do so today.

                                    FACTS

Prior to their trip to Maastricht, the Netherlands, Appellant testified that he and Airman Etzweiler met at the Noncommissioned Officers' Club and agreed on a trip to Maastricht because drugs there were one-fourth the cost of what they were paying in and around the airbase. Appellant knew the

directions to Maastricht.  On the day of the trip, Etzweiler

rendezvoused at Appellant's room and then drove to Maastricht.

They scouted a number of "head shops" where Etzweiler eventually

purchased psilocybin mushrooms.  He placed the drugs in his car,

made no effort to dispose of them, and drove back to the base

with Appellant.  Pursuant to their plan, they went back to the

base, picked up their friends at their dormitory rooms, and then

went to the festival where they used the drugs.  Prior to the

trip to Maastricht, Appellant admitted that they had used drugs

in the dormitory room on seven or eight occasions.  At the oral

argument, appellate defense counsel conceded that the "overt act

for introduction to mushrooms on base would be giving directions

to get the mushrooms in the first place."

Upon appeal to the Air Force Court of Criminal Appeals,

Appellant challenged the providence inquiry.  Specifically,

Appellant argued that he did not admit aiding or abetting the

wrongful introduction of psilocybin mushrooms to an armed forces

installation.

DISCUSSION

Standard of Review

As stated by this Court in United States v. Prater, 32 M.J.

433 (C.M.A. 1991), "rejection of the plea requires that the

record of trial show a 'substantial basis' in law and fact for

questioning a guilty plea."  Id. at 436.  In considering the

providence of a guilty plea, this Court has established that the entire record of the case must be considered. <u>United States v. Johnson</u>, 42 M.J. 443, 445 (C.A.A.F. 1995).

Therefore, in the present case, the entire trial record must be examined in order to determine whether there is a "substantial basis" in law and fact for rejecting this plea.

<u>Brief Summary of Guilty Plea Jurisprudence</u>

An examination of the jurisprudence of guilty pleas must start with <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969). The Court in <u>Boykin</u> ruled, "a guilty plea is more than an admission of conduct; it is a conviction." <u>Id.</u> at 242. Furthermore, the Court indicated that because a guilty plea involves the waiver of three constitutional rights, it should be treated in the same manner as the Court treated the waiver of the right to counsel. As the Court noted, "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." <u>Id.</u> (quoting <u>Carnley v. Cochran</u>, 369 U.S. 506, 516 (1962)). In other words, there must be evidence on the record of a guilty plea for that plea to be valid.

This Court adopted the <u>Boykin</u> rule into the military justice system in <u>United States v. Care</u>, 18 C.M.A. 535, 40

C.M.R. 247 (1969).  In Care, this Court determined the necessary elements for a voluntary guilty plea:

> In any event, the record of trial . . . must reflect not only that the elements of each offense charged have been explained to the accused but also that the military trial judge or the president has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make the basis for a determination by the military trial judge or president whether the acts or omissions of the accused constitute the offense or offense to which he is pleading guilty. . . .
>
> Further, the record must also demonstrate the military trial judge or president personally addressed the accused, advised him that his plea waives his right against self-incrimination, his right to trial of the facts by court-martial, and his right to be confronted by the witnesses against him; and that he waives such rights by his plea.

18 C.M.A. at 541, 40 C.M.R. at 253 (citations omitted).  Care expands upon the federal standard by requiring military judges to explain more than fifteen items to the accused.[*]

The Care decision was codified in Rule for Courts-Martial (R.C.M.) 910.  In particular, R.C.M. 910(c) reads, "Before accepting a plea of guilty, the military judge shall address the accused personally and inform the accused of, and determine that the accused understands, the following. . ."  The rule goes on to list things that must be reflected on the record, including the nature of the offense, the maximum and minimum penalties,

---

[*] United States v. Watruba, 35 M.J. 488, 495 n.4 (C.M.A. 1992)(Crawford, J., dissenting).

4

the associated waiver of rights, and the offense itself.  Id.
There is little doubt that the drafters of the R.C.M. intended
the Care requirements to be incorporated into the rules.  Care
is cited extensively in the analysis of R.C.M. 910(c) and R.C.M.
910(e).  Manual for Courts-Martial, United States, Analysis of
Rules for Courts-Martial app. 21 at A21-59 to A21-60 (2005 ed.).

There is ample support for the proposition that once a rule
of case law is adopted by Congress or is promulgated by the
President, it is "codified" and that the codified iteration of
the rule supplants the original case law.  United States v.
Lopez, 35 M.J. 35 (C.M.A. 1992).  Once the President creates a
rule, unless it is unconstitutional, this Court is bound to
follow it.  United States v. Scheffer, 523 U.S. 303 (1998).  In
United States v. Kossman, 38 M.J. 258 (C.M.A. 1993), this Court
ruled on the fate of United States v. Burton, 21 C.M.A. 112, 44
C.M.R. 166 (1971), a speedy trial decision that created a
procedural rule where none had existed.  In Kossman, this Court
decided that in the wake of the adoption of R.C.M. 707, "we
reiterate that the Burton presumption was court-made and
declared in a procedural vacuum, without the benefit of
presidential input.  Just as we created it, we now reconsider
it.  Burton and Driver are hereby overruled."  38 M.J. 258, 261
(C.M.A. 1993).  Likewise, because R.C.M. 910 is the codification
of Care, it supersedes Care and is the primary authority for

examining guilty pleas.  Subsequent case law should be used to interpret R.C.M. 910.

The latest decision that has had an impact on guilty plea jurisprudence is the aforementioned Bradshaw v. Stumpf.  In Bradshaw, the Supreme Court ruled, "[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."  125 S. Ct. at 2405.  Thus, Bradshaw directly resolves the issue presented before us.  Appellant admits on the record that he was a party to the offense because he was knowingly involved in bringing the mushrooms onto the base, which is all the Constitution requires according to this latest decision.

The admissions of guilt by Appellant's trial defense counsel also support the providence of the plea.  Bradshaw holds, "Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty."  Id. at 2406.  During the providence inquiry, the military judge gave a detailed instruction regarding aiding and abetting and recessed the court specifically to allow Appellant to confer with counsel:

6

MJ:  So I know I've instructed you on quite a bit
there.  I'm going to give you an opportunity to talk
to your counsel. . . . If the theory is aiding and
abetting, then I need to know from you specifically
how it is that you did one of those things I
instructed you on which is to encourage, counsel,
command or procure, aid or abet in some way the
commission of the offense. . . . When another person
knowingly encourages the criminal by his presence and
shares in a criminal purpose or activity, then that
other person becomes criminally involved.  So did you
share the criminal intent of bringing the mushrooms
back on the base?

After returning from recess, Appellant's trial defense counsel
made these statements on his behalf:

DC:  I've talked to my client.  I can tell you the
theory.

MJ:  Okay.  That would be helpful.

DC:  Basically my client is guilty on the aiding
theory.  You were asking what act did he do to
encourage the introduction.

MJ:  Right.

DC:  Well there's a few acts basically, Sir. . . .  He
knew what he was going for. . . .  So he was going to
help navigate the car.  In fact he did navigate to get
to Maastricht for the purpose of Etzweiler to buy
drugs . . . .

In light of the holding in Bradshaw, the military judge properly
relied on these statements by Appellant's trial defense counsel
in finding the guilty plea provident.

The holding in Bradshaw has already been cited in similar
cases.  For example, in United States v. Kappell, 418 F.3d 550
(6th Cir. 2005), the court upheld a no-contest plea where the

7

facts constituting the basis of the plea were not read into the trial record because defense counsel stated that the defendant understood them sufficiently. Id. at 560. See also United States v. McGlocklin, 8 F.3d 1037, 1047 (6th Cir. 1993) (nolo contendere plea upheld based on defendant's testimony that his counsel had explained the charge and that defendant had understood); Riggins v. McMackin, 935 F.2d 790 (6th Cir. 1991) (plea information may be obtained from counsel rather than the trial judge); Pitts v. United States, 763 F.2d 197 (6th Cir. 1985) (citing numerous other cases court held that information as to rights and voluntariness of the plea may be relayed by counsel rather than the trial judge); George v. United States, 633 F.2d 1299, 1301 (9th Cir. 1980) (in upholding plea, court found appellant had been informed of his constitutional right by defense counsel rather than the trial judge). Cf. Loving v. United States, 62 M.J. 235, 237 nn.7 & 9 (C.A.A.F. 2005) (discussing substantive application of Apprendi v. New Jersey, 530 U.S. 466 (2000). The present case presents a similar set of facts. Considering the technical legal language of the statement made by Appellant's trial defense counsel concerning the distinction between aiding and abetting and co-conspirator vicarious liability, it is not unreasonable that trial defense counsel spoke on behalf of Appellant.

8

The Bradshaw ruling was based on a case in civilian criminal court. Judges in civilian criminal courts are charged with ensuring that a plea is voluntary by Fed. R. Crim. P. 11(b)(2). The rule states, "Before accepting a plea of guilty . . . the court must address the defendant personally in open court and determine that the plea is voluntary . . ." (emphasis added). This language was altered to conform to the Supreme Court's decision in Boykin, 395 U.S. at 244, where the Supreme Court ruled that, when accepting a guilty plea, a judge must question the defendant on the record so that "he leaves a record adequate for any review that may be later sought." Prior to Boykin, Fed. R. Crim. P. 11 only required that the plea was made, "with understanding of the nature of the charge and the consequences of the plea." Fed. R. Crim. P. 11 advisory committee's note (on 1974 amendments). The post-Boykin alteration of the civilian rule parallels a similar change in the military rules.

The corresponding military rule is R.C.M. 910(d), which reads, "The military judge shall not accept a plea of guilty without first, by addressing the accused personally, determining that the plea is voluntary . . ." (emphasis added). As noted above, R.C.M. 910 is the codification of the ruling by this Court in Care adopting the Supreme Court's decision in Boykin. Fed. R. Crim. P. 11 and R.C.M. 910 contain similar language,

9

including the word "personally," because both were crafted to adopt the Boykin decision. Therefore, just as Bradshaw interprets Fed. R. Crim. P. 11, it also can be used to interpret R.C.M. 910.

The majority has previously discounted the Bradshaw decision, implicating the narrowed standards of federal habeas corpus review. See United States v. Aleman, 62 M.J. 281, 284 n.1 (C.A.A.F. 2006). However, these review standards rarely prevent courts from following the substantive law generated by habeas cases from the Supreme Court. E.g., Kyles v. Whitley, 514 U.S. 419, (1995) (interpreting Brady v. Maryland, 373 U.S. 83 (1963), as requiring a reasonable probability of a different result to be a violation); Manson v. Brathwaite, 432 U.S. 98 (1977) (interpreting Stovall v. Denno, 388 U.S. 293 (1967), and concluding that reliability, the key factor in identification testimony, is examined under the totality of the circumstances); Stovall, 388 U.S. at 298-301 (rule excluding identification of suspect without counsel is not retroactive); Gideon v. Wainwright, 372 U.S. 335 (1963) (Fourteenth Amendment applies the Sixth Amendment right to counsel to states who must provide attorneys to indigent defendants).

United States v. Gosselin II, No. 05-0255/AF

Legal Analysis -- Providence of Guilty Plea

Under R.C.M. 910, a military judge cannot accept a guilty plea from an accused unless it is determined to be voluntary. R.C.M. 910(d). As interpreted by this Court, this requires:

> [T]he accused must answer questions under oath in the presence of counsel that satisfy the judge that the plea is provident. RCM 910 (d) and (e). The judge also must determine that the plea of guilty results from the accused's own willingness to plead guilty and that he has not been coerced in any way.

United States v. Nelson, 51 M.J. 399, 400 (C.A.A.F. 1999). A careful examination of the trial record shows that the military judge fulfilled his duty during Appellant's providence inquiry.

Article 77, Uniform Code of Military Justice (UCMJ) (10 U.S.C. § 877 (2000), defines a "principal" as "Any person punishable under this chapter who . . . commits an offense . . . or aids, abets, counsels, commands, or procures its commission." (citations omitted.) The Manual for Courts-Martial, United States (2005 ed.)(MCM) further states the two elements necessary to be held liable for aiding and abetting a crime: "(i) Assist, encourage, advise, instigate, counsel, command or procure . . . another in the commission of the offense; and (ii) Share in the criminal purpose of design." MCM pt. IV, para. 1.b.(2)(b)(i)-(ii).

This Court has further clarified the requirements for aiding and abetting the wrongful introduction of controlled

11

substances to military installations in United States v. Knudson, 14 M.J. 13 (C.M.A. 1982). In Knudson, the Court stated that, "All that is necessary is to show some affirmative participation which at least encourages the principal to commit the offense in all its elements as defined by the statute." Id. at 15. In Knudson, the appellant was found guilty of aiding and abetting the wrongful introduction of lysergic acid diethylamide (LSD) onto a military installation. The appellant aided and abetted simply by informing a buyer that the seller still had the drugs and providing a pen and paper for the buyer to leave a note to the seller. Id. at 14. The actions by Appellant in the present case are no less culpable.

Element I -- The Act

Mere presence at the scene of a crime does not make one an aider and abettor. MCM pt. IV, para. 1.b.(3)(b). This Court has recognized that presence with prior knowledge of the principal's intent to commit a crime is insufficient to establish accomplice liability. United States v. Burroughs, 12 M.J. 380 (C.M.A. 1982). However, in this case, merely examining presence and prior knowledge does not constitute a complete analysis.

The effect of the presence on the principal must also be examined. Courts have found that, under some circumstances, presence at a crime can be considered encouragement sufficient

to constitute aiding and abetting.  United States v. Dunn, 27 M.J. 624, 625 (A.F.C.M.R. 1988).  In Dunn, the appellant was found guilty of aiding and abetting a theft because his presence at the crime knowingly encouraged the principal and he shared in the criminal purpose.  Id.  The facts in the present case likewise show encouragement by presence.  The evening prior to the trip to Maastricht, Appellant testified that Airman Etzweiler approached him regarding the trip

> ACC:  It was something along the lines of like well I'm going up to Maastricht tomorrow.  I don't have anybody else to go with.  He knew I had been up to Eindhoven which is on the same autobahn . . . . So I told him I could get him there and told him I know the direction and all that.

Airman Etzweiler was seeking company on his trip to Maastricht, specifically company that could direct him to Maastricht, where the drugs were.  Appellant's statement concerning "get[ting] him there" is an admission to the overt act necessary to aiding and abetting.  Whether or not Appellant actually gave Airman Etzweiler directions is immaterial; his presence, as someone who could navigate to Maastricht, is encouragement.

Furthermore, Appellant's defense counsel admitted that accompanying Airman Etzweiler to Maastricht was sufficient to constitute an overt action by Appellant for the purposes of aiding and abetting.  During oral argument, Appellant's defense counsel was asked three times about this matter by two different

13

judges of this Court.  At one point, Appellant's defense counsel emphatically responded to these inquiries stating, "And we would concede that an overt act for introduction to mushrooms on base would be giving directions to getting the mushrooms in the first place."  The majority ignores this concession.

Element II -- Intent

Appellant's intent can be inferred from the facts and circumstances of the case.  United States v. Speer, 36 M.J. 997, 1001 (A.C.M.R. 1993).  The case before us is rich in facts supporting an inference of shared intent on behalf of Appellant.  Appellant knew one of the stated purposes of the trip to Maastricht was to purchase psilocybin mushrooms.  Appellant accompanied Airman Etzweiler into a third "head shop" after he had completed his stated purpose for the trip to Maastricht (buying the dragon statue) and witnessed the actual purchase.  These facts support an inference of Appellant's intent to see the crime carried out.

Additionally, Appellant made no effort to prevent the purchase or introduction of the psilocybin mushrooms onto the base.  This inaction can be used against Appellant to infer a shared intent.  In United States v. Deason, 3 C.M.R. 391, 394 (A.B.R. 1952), the court stated:

> [I]f the proof shows that a person is present at the
> commission of a crime without disapproving or opposing
> it, it is competent for the jury to consider this

14

conduct, in connection with other circumstances and thereby reach the conclusion that he assented to the commission of the crime, lent his countenance and approval and was thereby aiding and betting the same.

Thus, Appellant's silence at the Spangdahlem entry gate can be used to infer a shared criminal intent on his part.

This Court has recognized that subsequent acts may also be used to infer prior intent. United States v. Barrett, 3 C.M.A. 294, 12 C.M.R. 50 (1953). In Barrett, this Court ruled that "Certainly an intent existing at a particular time can be inferred from other acts transpiring either before or after." 3 C.M.A. at 297, 12 C.M.R. at 53. This principal has been consistently upheld and recognized. United States v. Pugh, 38 C.M.R. 541, 543 (A.B.R. 1967); United States v. Miller, 33 C.M.R. 563, 565-66 (A.B.R. 1963); United States v. Goad, 16 C.M.R 886, 893 (A.F.B.R 1954). Applied to this case, intent to introduce the psilocybin mushrooms may be inferred by Appellant's use of those very mushrooms later that day in Trier, Germany, and again soon thereafter on Spangdahlem Air Force Base. Furthermore, both instances of use were with Airman Etzweiler. The subsequent use of the same psilocybin mushrooms introduced to Spangdahlem by Airman Etzweiler and Appellant support an inference of Appellant's prior intent.

CONCLUSION

The military judge in this case conducted an extensive providence inquiry. Over twenty pages of the record demonstrate the military judge took great care to fulfill constitutional and procedural standards in his inquiry. I am satisfied that these standards have been met under the latest Supreme Court precedent and would affirm the decision of the court below. For the foregoing reasons, I respectfully dissent.