Judge ERDMANN
delivered the opinion of the court.
Airman First Class Stephen P. Gosselin II pled guilty to using psilocybin mushrooms, using and distributing marijuana, and wrongfully introducing psilocybin mushrooms onto Spangdahlem Air Base, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). Gosselin was sentenced to confinement for thirty days, a reduction in grade to E-l, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and the Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Gosselin, 60 M.J. 768 (A.F.Ct.Crim. App.2004).
This court will set aside a guilty plea where it determines that there is a “substantial basis in law and fact for questioning the guilty plea.” United States v. Milton, 46 M.J. 317, 318 (C.A.A.F.1997) (quotation marks omitted). In accepting Gosselin’s *350 guilty plea to the offense of introducing mushrooms onto Spangdahlem Air Base, the military judge relied on an “aiding and abetting” theoiy of liability. Under that theory Gosselin was required to admit to facts showing that he intentionally and knowingly assisted or participated in the commission of the offense by the primary actor, Airman Etzweiler. We granted review to determine whether Gosselin’s providence inquiry established that he was guilty of aiding and abetting Etzweiler in his commission of the offense.[1]

BACKGROUND

The sole issue before the Air Force Court of Criminal Appeals and this court is the providence of Gosselin’s guilty plea to the offense of wrongful introduction of psilocybin mushrooms onto Spangdahlem Air Base. The military judge conducted an extensive providence inquiry into this offense and recessed the inquiry on two occasions to allow Gosselin the opportunity to consult with his attorney.
The military judge first listed the elements of the “introduction” offense and provided Gosselin the opportunity to explain why he was guilty of the offense. Gosselin initially stated that he went with Etzweiler to Maastricht[2] where he “had a good idea” Etzweiler intended to purchase mushrooms. He testified that he agreed to go to Maastricht with Etzweiler because he wanted to purchase a dragon statue there.
Once in Maastricht, the two went into some “head shops” where Gosselin looked for and purchased a dragon statue. After Gosselin purchased his dragon, he accompanied Etzweiler while he went into “head shops” looking for mushrooms. In one shop Gosselin observed the cashier hand a bag to Etzweiler and he testified that he knew the bag contained mushrooms. The two of them then left the store and returned to the base in Etzweiler’s car with Etzweiler driving.
The military judge asked Gosselin to explain specifically how he introduced the mushrooms onto the base. Gosselin responded that he got into the car with Etzweiler knowing that he had mushrooms in his possession and went back onto the base. He stated that he knew the mushrooms were in the car when they went onto the base because they made no stops and he did not see Etzweiler put anything into his mouth. He also told the military judge that he did not know what Etzweiler intended to do with the mushrooms, but that later that evening they used them.
When the military judge asked Gosselin if he was guilty as an accomplice and was knowingly involved in bringing the mushrooms onto the base, Gosselin agreed. Gosselin noted that he could have avoided being a party to the introduction of the mushrooms onto the installation by telling Etzweiler to get rid of them, by refusing to accompany him to Maastricht, or by reporting to the gate guard that the drugs were in the car. At that point the military judge recessed the hearing for lunch but directed the trial counsel and defense counsel “to look at ... whether on these facts that the offense of wrongful introduction is completed.”
Upon return from the recess, the military judge renewed his questioning of Gosselin in regard to the “introduction” offense. Gosselin provided additional background facts during this inquiry and stated that while the two of them were at the Non-Commissioned Officers Club a few evenings before the trip, Etzweiler had told him that he wanted to go to Maastricht to purchase mushrooms. Gosselin did not discuss the proposed mushroom purchase with Etzweiler further, but told him that he wanted to go to Maastricht to purchase a dragon statue. Etzweiler knew that Gosselin had been to that area before and Gosselin told Etzweiler that he could get him there.
*351 The morning of the trip, Etzweiler asked Gosselin if he was still up for going and Gosselin said that he was. Gosselin testified that on the ride to Maastricht they did not talk about buying mushrooms but “just basically listened to the radio the whole way up.” Gosselin did not testify that he actually provided Etzweiler directions during the trip to Maastricht.
In response to further questions from the military judge, Gosselin repeated his description of their time in Maastricht, describing again how he observed Etzweiler purchase what he believed to be mushrooms while he looked around the shop and how they then returned to the base. He also repeated that there was no discussion about the mushrooms on the trip back to the base and that the decision to use the mushrooms did not occur until much later that evening after the mushrooms had already been introduced onto the base.
Following this discussion between Gosselin and the military judge, the military judge instructed Gosselin on various theories of accomplice liability. He told Gosselin that if there was an issue of vicarious liability of a co-conspirator, he would need to know that there was an agreement or meeting of the minds between Gosselin and Etzweiler to bring the mushrooms back on base and that there was an act in furtherance of the meeting of the minds. If the theory was aiding and abetting, then the military judge stated he would need to know how it was that Gosselin encouraged, counseled, commanded, procured, aided or abetted in some way the commission of the offense. The military judge stated that he needed Gosselin to “specify it for me in your own words.” Following this exchange the defense counsel requested a recess.
Upon returning from this second recess the military judge asked the defense counsel if he had looked at the issue. Defense counsel responded that he had and that he could provide the military judge with a legal theory. The military judge, apparently having difficulty finding the requisite facts for a provident plea, informed the defense counsel, “That would be helpful.”
The defense counsel informed the military judge that Gosselin was pleading guilty under an aiding and abetting theory. He then articulated the facts on which the theory relied, specifically: Gosselin agreed to go to Maastricht knowing that Etzweiler intended to purchase mushrooms; Gosselin did nothing to discourage this; Gosselin indicated he had been there before and could help navigate; Gosselin did help navigate on the way there;[3] Gosselin voluntarily went into the shop where he knew Etzweiler intended to purchase the mushrooms; and Gosselin knew Etzweiler bought the mushrooms and knew they were in the car and yet Gosselin said nothing to the gate guard when they entered the base.
The military judge indicated his agreement with defense counsel’s aiding and abetting theory and stated that Etzweiler “needed your client’s assistance in being able to get to this place and locate where Maastricht was so he could make this purchase. So I think that’s a very relevant fact.”

DISCUSSION

Although Gosselin was not the primary actor in the offense of introducing mushrooms onto Spangdahlem Air Base, he may be held liable as a principal to the crime if he “aids, abets, counsels, commands, or procures [its] commission.” Manual for Courts-Martial, United States pt. IV, para. l.b.(l) (2005 ed.)(MCM). Gosselin’s defense counsel informed the military judge that Gosselin was pleading guilty under an aiding and abetting theory and the military judge accepted the plea on that basis.
This court has stated that the elements of aiding and abetting an offense under Article 77, UCMJ, 10 U.S.C. § 877 (2000), are:
(1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted *352 or participated in the commission of the offense.
United States v. Pritchett, 31 M.J. 213, 217 (C.M.A.1990) (citations omitted). This court has also found:
For an accused to be a principal under Article 77, and thus to be guilty of the offense committed by the perpetrator, he must (1) “assist, encourage, advise, instigate, counsel, command, or procure another to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense”; and (2) “share in the criminal purpose of design.” Para. lb(2)(b), Part IV, Manual for Courts-Martial, United States, 1984.
Our case law has generally interpreted Article 77 to require an affirmative step on the part of the accused.
United States v. Thompson, 50 M.J. 257, 259 (C.A.A.F.1999).
If the admissions made by Gosselin at his providence inquiry do not establish each of the four elements discussed in Pritchett, we must set aside his guilty plea. See United States v. Jones, 34 M.J. 270, 272 (C.M.A. 1992). The record established that Gosselin knew that Etzweiler wanted to go to Maastricht to purchase mushrooms. Gosselin agreed to accompany Etzweiler because he wanted to purchase a dragon statute. While Gosselin told Etzweiler that he could provide directions to Maastricht, the record is silent as to whether he provided any assistance. Gosselin knew that Etzweiler purchased mushrooms in Maastricht and that he put them in the car. Gosselin then rode back onto Spangdahlem Air Base in Etzweiler’s car with the mushrooms in the car.[4]
Although it appears that the military judge struggled to solicit testimony as to Gosselin’s intent to “share in the criminal purpose” of introducing the mushrooms onto the base, he was not successful. Nor does the record reflect that Gosselin participated in Etzweiler’s act of introducing mushrooms onto the military installation by taking an affirmative step.
In finding that Gosselin was guilty of aiding and abetting, the military judge relied on the admission by Gosselin’s defense counsel that Gosselin helped Etzweiler navigate on the trip to Maastricht, noting that this was “a very relevant fact.” The Court of Criminal Appeals conceded that the record was not clear as to exactly how much navigation assistance Gosselin provided but noted that it was “obvious he agreed to provide assistance”. 60 M.J. at 771. We find nothing in the record that establishes that Gosselin provided any navigational assistance. The statements from his defense counsel that he did so are not sufficient to establish this fact where Gosselin never personally adopted those statements.
Furthermore, even if we were to assume that the record supports the fact that Gosselin provided navigational assistance to Maastricht, that fact may have established only that Gosselin provided assistance for the offense of purchasing the mushrooms under an aiding and abetting theory.[5] It does not, however, translate into an affirmative act for the later separate offense of introduction of the mushrooms onto the base. There was no evidence or suggestion that Gosselin assisted Etzweiler in navigating back to Spangdahlem Air Base and there was no discussion as to what Etzweiler was planning to do with the mushrooms.
We note that during the providence inquiry, in responding to a question from the military judge, Gosselin agreed that he was guilty as an accomplice because he “was a party” to the introduction of the drugs onto the military base. Gosselin further agreed that he was “knowingly involved”, even though he was not the primary actor. These conclusory responses to the military judge’s questions regarding his liability as an accom *353 plice are not sufficient for us to find Gosselin’s plea provident. Conclusions of law alone do not satisfy the requirements of Article 45, UCMJ, 10 U.S.C. § 845 (2000), and Rule for Courts-Martial 910(e). United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002) (“It is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty.”). This is especially true where, as here, these responses are not supported by the factual statements made by Gosselin elsewhere in the providence inquiry.
The Government also argues that Gosselin had a duty to interfere in the commission of the “introduction” offense and his failure to do so makes him a party to the offense. MCM pt. IV, para. l.b.(2)(b)(ii) provides:
In some circumstances, inaction may make one liable as a party, where there is a duty to act. If a person (for example, a security guard) has a duty to interfere in the commission of an offense, but does not interfere, that person is a party to the crime if such a noninterference is intended to and does operate as an aid or encouragement to the actual perpetrator.
The military judge, in a conclusory manner, solicited admissions from Gosselin that he had a duty to interfere and inform the gate guard that Etzweiler had mushrooms in the car. Gosselin responds that he held no special position which would create a duty to interfere nor was he Etzweiler’s supervisor. We need not determine whether a duty existed in this case because even if there was a duty, it was not established that Gosselin’s noninterference was intended to act as aid or encouragement to Etzweiler. See United States v. McCarthy, 11 C.M.A. 758, 761-62, 29 C.M.R. 574, 577-78 (1960) (noting that to establish liability for aiding and abetting a crime “it is not sufficient to demonstrate mere presence at the scene of the crime” and concluding that where the accused did not take any affirmative action to assist in the commission of a larceny, “failure to take affirmative measures to prevent the commission of the larceny does not in any way establish guilt as a principal”).
The providence inquiry failed to establish that Gosselin intended to facilitate Etzweiler’s introduction of mushrooms onto a military installation or assisted or participated in the commission of the offense. See Pritchett, 31 M.J. at 217. Because we find a “substantial basis in law and fact for questioning the guilty plea” Specification 4 of the Charge must be reversed. Milton, 46 M.J. at 318 (quotation marks omitted).

DECISION

The decision of the Air Force Court of Criminal Appeals is reversed. The finding of guilty of Specification 4 of the Charge and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals. That court may either dismiss Specification 4 of the Charge and reassess the sentence, or it may order a rehearing.

. We granted review of the following issue:
WHETHER APPELLANT’S GUILTY PLEA TO SPECIFICATION 4 OF THE CHARGE WAS IMPROVIDENT WHERE, DURING THE PROVIDENCE INQUIRY, APPELLANT DID NOT PERSONALLY ADMIT TO AIDING OR ABETTING ANOTHER AIRMAN IN THE COMMISSION OF THE OFFENSE CHARGED.

. Maastricht is located in the Netherlands.

. Gosselin never admitted that he helped Etzweiler navigate to Maastricht and the only reference to this in the record came from the defense counsel.

. Gosselin’s presence in the car, by itself, is not sufficient to establish guilt. "Mere inactive presence at the scene of the crime does not establish guilt____ The law requires concert of purpose or the aiding or encouraging of the perpetrator of the offense and a conscious sharing of his criminal intent.” United States v. Burroughs, 12 M.J. 380, 382-83 (C.M.A.1982) (citations omitted).

. Gosselin was not charged in regard to the purchase of the mushrooms.