ERDMANN, Judge,
with whom RYAN, Judge,
joins (concurring in part and dissenting in part):
I concur with the majority’s determination that the military judge did not err in denying the motion to dismiss the charges or to disqualify trial counsel based on Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). I respectfully dissent, however, from the majority’s conclusion that the evidence in this case is legally sufficient to convict Vela under Article 134, UCMJ, 10 U.S.C. § 934 (2006), of wrongfully placing an AK-47 on the body of Ghani Nasr Khu-dayyer Al-Janabi. While the majority is correct in stating the panel members were free to examine all evidence presented in the case when rendering their verdict, there is no evidence from which a reasonable panel member could infer that Vela placed the weapon himself, knew Hensley was going to place a weapon on Al-Janabi’s body, assisted Hensley in placing the weapon, or had a duty to prevent Hensley from committing the act. *291 Accordingly, I would set aside the findings as they pertain to this charge and specification.
The starting point in any legal sufficiency analysis is to compare the plain language of the charge and specification with the evidence presented at trial. The charge and specification here alleged a discrete act — that Vela wrongfully placed an AK-47 on Al-Janabi’s body and that conduct was to the prejudice of good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces. At trial, Hensley testified that he placed the AK-47 on Al-Janabi’s body and that Vela did not know about the AK-47, nor did he assist Hensley in placing the weapon on Al-Janabi’s body. This is consistent with Vela’s statements to CID. Additionally, Hensley testified that he did not discuss the “cover-up” story with the members of his unit until after they returned to base. While the specification charged Vela with wrongfully placing an AK-47 on Al-Janabi’s body, there was no evidence to support that Vela did so. The Government, however, proceeded under an aiding and abetting theory both at trial and before this court.
In order to convict under an aiding and abetting theory, the Government must show: (1) specific intent to facilitate the commission of the crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the commission of the crime. United States v. Gosselin, 62 M.J. 349, 351-52 (C.A.A.F.2006). To be convicted, the aider must share the criminal intent to commit the crime with the principal. United States v. Pritchett, 31 M.J. 213, 216 (C.M.A.1990). Our ease law has generally required the defendant to take an affirmative step to assist in the crime, but failure to act when there is a duty to prevent the crime can also be sufficient to establish intent to aid and abet. Gosselin, 62 M.J. at 352; United States v. Simmons, 63 M.J. 89, 93 (C.A.A.F 2006). The existence of a duty to prevent the crime, however, does not per se establish a shared purpose to commit the crime. Simmons, 63 M.J. at 93. Additionally, mere presence at the scene of the crime is not enough to prove aiding and abetting, even though it is a factor to be considered in deciding whether the evidence meets the elements of aiding and abetting. Pritchett, 31 M.J. at 217 (noting that presence is a factor, but that the court “still must examine the record for other evidence of [A]ppellant’s purposeful association with [the crime] and some act of participation, assistance, or encouragement of [the crime]”).
In its brief, the Government states Vela’s actions after the incident, including lying to CID about the events surrounding the murder, provide a legally sufficient basis on which a rational panel member could infer that Vela intended to commit the crime of wrongfully placing an AK-47 on Al-Janabi’s body. However, this argument ignores the evidence that Vela had no knowledge that Hensley had an AK-47 and intended to place it on Al-Janabi’s body, as well as the fact that covering up the murder was not discussed until well after the incident occurred. A person cannot form the requisite intent to aid and abet another in committing a crime without knowledge that the other party intends to commit the crime. Simmons, 63 M.J. at 93. Contrary to the Government’s argument, Vela’s collusion with Hensley to murder Al-Janabi is not sufficient to infer he also knew of or agreed to Hensley’s actions in placing the AK-47 on Al-Janabi’s body. Gosselin, 62 M.J. at 352 (an affirmative act, which provides assistance for one offense, does not “translate into an affirmative act for [a] later separate offense”).
The majority asserts that a rational panel member could find the requisite intent to kill Al-Janabi and stage the scene by examining Vela’s actions before, during, and after the murder and placement of the weapon. It goes into great detail discussing the different interpretations of the evidence panel members could have used to reach their verdict, including the suggestion that Vela intended to facilitate Hensley’s commission of a minor crime — the placing of the weapon- — by committing a major crime — the killing Al-Janabi. This is similar to the Government’s theory that the “affirmative step” Vela took in order to aid and abet Hensley’s wrongful place *292 ment of the weapon was to murder Al-Jana-bi. This analysis strains logic.
There is nothing to support the contention that Vela’s actions at the hide site were the result of an intention to aid and abet Hensley in covering up the murder of Al-Janabi by placing the AK-47 on the victim’s body. The majority’s reliance on United States v. Richards, 56 M.J. 282 (C.A.A.F.2002), and United States v. Shearer, 44 M.J. 330 (C.A.A.F. 1996), is not persuasive. In Richards, this court held that while Richards did not know his codefendant had a knife and intended to use it to assault the victim, Richards’ intent to aid and abet could be inferred provided Richards intended the consequence of the principal’s actions. Richards, 56 M.J. at 286. This is distinguishable from Vela’s case because while a rational factfinder could conclude someone who was actively and continuously assaulting a helpless victim intended that the victim be harmed (as was the case in Richards), there is no logical way to conclude Vela intended that Hensley would cover-up the murder by planting an AK-47 on the victim after Vela shot him, when Vela had no knowledge of that weapon or Hensley’s intent when he shot Al-Janabi. As for Shearer, while it is true that this court found Shearer aided and abetted the fleeing of the accident scene by helping to cover up the accident, that case is distinguishable from Vela’s because Shearer actively encouraged and participated in fleeing the scene and the cover up of the accident as it was occurring. That is not the case with Vela.
Nor is there any evidence that Vela had a duty to prevent Hensley from placing the weapon. The evidence proves beyond a reasonable doubt that Vela killed Al-Janabi at Hensley’s direction. But that is where Vela’s participation ends. There is simply no evidence from which a reasonable panel member could infer that Vela intended to assist Hensley in placing the weapon on Al-Jana-bi’s body and actually assisted or participated in that discrete act. Without this essential element of the crime, the charge cannot stand.
A more appropriate charge against Vela may have been obstruction of justice, in which the accused commits an act with the belief that there are or will be criminal charges against him and that act is intended to “influence, impede, or otherwise obstruct the due administration of justice.” Manual for Courts-Martial, United States pt. IV, para. 96.b.(1-3) (2008 ed.). Vela’s actions during the subsequent criminal investigation may have supported an intent to impede the investigation at that time by lying about what actually happened at the hide site.
While there may be evidence from which a reasonable panel member could have found Vela guilty of obstruction of justice, that is not the crime with which he was charged. Therefore I would find the conviction for placing the AK-47 on Al-Janabi’s body to be legally insufficient.