# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
AYRES, YOB, and KRAUSS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class GREGORY A. RICE**
**United States Army, Appellant**

ARMY 20100678

Headquarters, III Corps and Fort Hood
Gregory A. Gross, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Lieutenant Colonel Charles C. Choi, JA (on brief).

For Appellee: Lieutenant Colonel Amber J. Roach, JA; Major Julie A. Glascott, JA; Captain Daniel H. Karna, JA (on brief).

18 December 2012

------------------------------------
OPINION OF THE COURT
------------------------------------

KRAUSS, Judge:

Pursuant to his pleas, a military judge, sitting as a general court-martial, convicted appellant of wrongful sexual contact, two specifications of indecent acts, indecent exposure, and two specifications of housebreaking in violation of Articles 120 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 930 (2006 & Supp. I 2007) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for forty-two months, forfeiture of all pay and allowances, and reduction to the grade of E-1. In accordance with the terms of a pretrial agreement, the convening authority approved confinement for thirty-six months, but otherwise approved the adjudged sentence.

Appellant's case is now before this court for review under Article 66, UCMJ. Appellant asserts that dilatory post-trial processing of his case warrants relief but otherwise offers no complaint. After examining the record of trial, and considering

the parties' briefs, we find a substantial basis in law and fact to reject appellant's pleas of guilty to the charges of indecent acts and housebreaking with the intent to commit indecent acts.

Here we have a case where the military judge, defense and government counsel all endorsed an erroneous view of the law and a record that fails to satisfactorily establish a knowing plea of guilty on the part of the accused. Charged with criminal voyeurism as an indecent act under Article 120, UCMJ, and housebreaking under Article 130, UCMJ, with the intent to commit an indecent act under Article 120, UCMJ, the judge never properly defined the offense and appellant never offered sufficient admission to that particular offense necessary to approve the findings of guilty associated with that crime. Therefore relief shall be addressed below and granted in our decretal paragraph.

Preface to our opinion is the statute under which appellant was charged that was in effect at the time of his alleged offenses:

**Article 120, UCMJ, Indecent Act (2007 version)**

Article 120(k) *Indecent act.* Any person subject to this chapter who engages in indecent conduct is guilty of an indecent act and shall be punished as a court-martial may direct.

Article 120(t)(12) *Indecent conduct.* The term 'indecent conduct' means that form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations. Indecent conduct includes observing, or making a videotape, photograph, motion picture, print, negative, slide, or other mechanically, electronically, or chemically reproduced visual material, without another person's consent, and contrary to that other person's reasonable expectation of privacy, of—

(A) that other person's genitalia, anus, or buttocks, or (if that other person is female) that person's areola or nipple; or

(B) that other person while that other person is engaged in a sexual act, sodomy (under section 925 (article 125) of this chapter), or sexual contact.

2

**FACTS**

While deployed in Iraq, appellant surreptitiously observed, photographed and made video recordings of female soldiers and contractors in various states of undress in a female shower trailer. In addition, both in Iraq and at Fort Hood, appellant unlawfully entered facilities intended for the use of female personnel only, where one might find women in various states of undress.[1]

In light of this conduct, appellant faced two specifications of a violation of Article 120, UCMJ, alleging the offense of indecent act and two specifications of a violation of Article 130, UCMJ, alleging the offense of housebreaking as follows:

In Specification 2 of Charge I, Article 120, UCMJ:

> In that [appellant], . . . did, at or near Forward Operating Base Rustamiyah, Baghdad, Iraq, on divers occasions between on or about 1 January 2009 and 31 January 2009, wrongfully commit indecent conduct, to wit: observing and making digital recordings of naked and partially clothed women while they conducted hygiene tasks and dressed in a female shower trailer.

In Specification 3 of Charge I:

> In that [appellant], . . . did, at or near Forward Operating Base Rustamiyah, Baghdad, Iraq, on or about 15 April 2008, wrongfully commit indecent conduct, to wit: wrongfully observing SPC [TM's] partially naked body while she was dressing in a female shower trailer.

In Specification 1 of Charge II, Article 130, UCMJ:

> In that [appellant], . . . did, on or about 29 March 2008, unlawfully enter a female shower trailer . . . with intent to commit a criminal offense, to wit: a violation of Article 120, UCMJ, Indecent Acts, therein.

And, in Specification 2 of Charge II:

---

[1] While we need not address the facts relative to appellant's provident pleas to wrongful sexual contact, indecent exposure and housebreaking with the intent to commit indecent exposure here, we address those offenses in the context of appropriate relief below.

> In that [appellant], . . . did, on or about 13 August 2009,
> unlawfully enter a female locker and shower room . . .
> with intent to commit a criminal offense, to wit:  a
> violation of Article 120, UCMJ, Indecent Exposure and an
> Indecent Act, therein.

Appellant entered pleas of guilty to each of these specifications.

The judge then provided the following description and definition of elements:

> MJ:  Take a look at Specification 2 of Charge I.
>
> [The accused did as directed.]
>
> And there you are charged with the offense of indecent
> acts.  The elements of this offense are as follows:
>
> One, that on divers occasions between on or about 1
> through 31 January of 2009, at or near FOB Rustamiyah,
> Baghdad, Iraq, you engaged in a certain wrongful conduct,
> to wit:  you observed and made visual recordings of naked
> and partially clothed women while they conducted hygiene
> tasks and dressed in a female shower trailer;
>
> And the second element, is that the conduct was indecent.
>
> 'Indecent Conduct' means that form of immorality relating
> to sexual impurity which is grossly vulgar, obscene and
> repugnant to common propriety, and tends to excite sexual
> desires or deprave morals with respect to sexual relations.
> 'Indecent Conduct' includes, but is not limited to
> observing or making a video tape, photograph, motion
> picture, print, negative[,] slide or other mechanically,
> electronically or chemically reproduced visual material
> without another person's consent, and contrary to the
> other person's reasonable expectation of privacy.
>
> 'Wrongful' means without legal justification or lawful excuse.
>
> Take a look at Specification 3 of Charge I.
>
> [The accused did as directed.]

There you are charged with another offense of indecent acts. The elements of this offense are as follows[:]

One, that on or about 14 April of 2008, at FOB Rustamiyah, Baghdad, Iraq, you engaged in a certain wrongful conduct, to wit: you observed Specialist [TM's] partially naked body while she was dressing in a female shower trailer; and

Two, that the conduct was indecent.

. . .

MJ: Take a look at Specification 1 of Charge II.

[The accused did as directed.]

And there you are charged with the offense of housebreaking. The elements of this offense are as follows:

One, that on or about 29 March 2008, at or near FOB Rustamiyah, Baghdad, Iraq, you unlawfully entered a female shower trailer, the property of the United States Government;

And two, that the unlawful entry was made with the intent to commit therein the criminal offense of indecent acts.

'Unlawfully Enter' means an unauthorized entry without the consent of any person authorized to consent to the entry, and without other proper lawful authority. Proof that you actually committed or even attempted to commit the offense of indecent acts is not required, however, you must have intended each element of that offense at the time of the unlawful entry. These elements are as I informed you regarding Specifications 2 and 3 of Charge I. Would you like me to repeat those elements, PFC Rice?

Acc: No, Your honor.

. . .

MJ: Take a look at Specification 2 of Charge II.

[The accused did as directed.]

In there you are charged with another offense of housebreaking. The elements of this offense are as follows:

One, that on or about 13 August 2009, at or near Fort Hood, Texas, you unlawfully entered a female locker room at Greywolf Gym, the property of the United States Governmnet;

And two, that the unlawful entry was made with the intent to commit therein, the criminal offenses of indecent exposure and indecent acts.

Proof that you actually committed or even attempted to commit the offense of indecent exposure and indecent acts is not required. However, you must have intended each element of those offenses at the time of the unlawful entry.

The elements of those offenses are, as I informed you regarding Specifications 2, 3 and 4[2] of Charge I, would you like me to repeat those elements, PFC Rice?

Acc: No, Your Honor.

MJ: PFC Rice, do you understand the elements and definitions as I read them to you?

Acc: Yes, Your Honor.

MJ: Do you have any questions about any of them?

Acc: No, Your Honor.

MJ: And do you understand that your plea of guilty admits that these elements accurately describe what you did?

Acc: Yes, sir.

---

[2] Specification 4 of Charge I was an indecent exposure charge unimportant to our discussion here.

MJ: And do you believe and admit that the elements and definitions taken together do correctly describe what you did?

Acc: Yes, sir.

The providence inquiry ensued and included, in pertinent part, the following:

Acc: On or about 1 January 2009 and 31 January 2009, at FOB Rustamiyah, Iraq, I observed and digitally recorded female personnel in various states of undress while they were conducting hygiene tasks in the female shower trailer. I knew that doing so was wrongful because I was not doing it as part of law enforcement or in medical treatment.

. . .

MJ: And did the women that you were videotaping and watching, did they know that you were watching them?

Acc: No, Your Honor.

MJ: Or videotaping?

Acc: No, Your Honor.

MJ: I told you the definition of indecent, do you admit, given that definition of indecent conduct, that that was indecent?

Acc: Yes, Your Honor.

. . .

MJ: Go ahead, continue.

. . .

Acc: On or about 15 April 2008, FOB Rustamiyah, Iraq, I observed Specialist [TM] while she was getting dressed in the female shower trailer. She did not know that I was watching her at the time, and I did not have her permission to observe her getting dressed. I knew that doing so was

wrongful because I was not doing it as part of law enforcement or in medical treatment.

MJ: Was Specialist [TM] partially naked when you were watching her, PFC Rice?

Acc: Yes, Your Honor.

MJ: And again, given the definition of indecent, do you admit that that was indecent?

Acc: Yes, Your Honor.

. . .

MJ: Tell me about Specification 1 of Charge II.

Acc: On 29 March 2008, Rustamiyah, Iraq, I entered the female shower trailer located on FOB Rustamiyah. I did not have permission or authority to be in the trailer. I knew that what I was doing was wrongful because I was not doing it as part of law enforcement or in medical treatment.

MJ: And why did you enter the female shower trailer, PFC Rice?

Acc: To view naked females, Your Honor.

MJ: And the reason I'm asking that is because the second element is that the unlawful entry was made with the intent to commit, therein, the criminal offense of indecent acts, and that's what you pled guilty to. Did you intend to commit that offense of indecent acts when you unlawfully entered the shower trailer?

Acc: Yes, Your Honor.

. . .

MJ: Tell me about Specification 2 [of Charge II]—

. . .

Acc:  On 13 August 2009, at Fort Hood, Texas, I entered the women's locker room at Abrams Gym.  I did not have permission to be in the women's locker room and when I entered the locker room I knew what I was doing.  I knew that what I was doing was wrongful and that I was not doing it as part of law enforcement or in medical treatment.  I entered the locker room with the intent to expose myself to the female inside the shower.

MJ:  PFC Rice, the specification was amended back in January of this year, to also include that you entered the shower room with the intent to commit the offense of indecent acts as well.  I'm just guessing here, but I would assume what the government was alleging was that you went in there to view females who were partially naked.

Is that what your theory was, Government?

TC:  Yes, Your Honor.

MJ:  Is that why you went in there, PFC Rice?

Acc:  Yes, Your Honor.

MJ:  For both of those reasons, to view women who were partially naked and to expose yourself?

Acc:  Yes, Your Honor.

From the stipulation of fact admitted the following is relevant:

On or about 15 April 2008 at FOB Rustamiyah, Baghdad, Iraq, the Accused poked his head into a female shower trailer.  As he looked in, he saw SPC [CW] and SPC [TM] who were wearing only a t-shirt and panties. . . .

On or about 15 Jan 2009 at FOB Rustamiyah, Baghdad, Iraq, the Accused revealed to PV2 [ES] that he had been peeping into a female shower trailer and videotaping/photographing females therein. . . .  The Accused asked PV2 [ES] how far his wild side went then explained that he had found a way to spy on the female latrine. . . .  [H]e showed PV2 [ES] how he peered into the structure through a vent. . . .  Once back at the barracks,

9

> the Accused showed PV2 [ES] videos he had taken of females in the shower trailer. The videos were of one Ugandan female, three female soldiers and one interrogator. . . .
>
> The Accused's video camera was seized and a forensic analysis was conducted. The investigation and forensic analysis determined that on or about 15-31 Jan 2009, at FOB Rustamiyah, Baghdad, Iraq, the Accused videotaped SSG [NL,] SPC [MM] and KBR employee Ms. [SK] without their knowledge while they conducted personal hygiene inside a female shower trailer. . . . None of the victims were aware that the photos/movies had been taken of them and none had granted permission for these photos/movies to be taken of them.
>
> A forensic examination of the Accused's digital media revealed 13 deleted digital video files and one (1) digital image file of evidentiary value. The digital video files contain footage of females conducting personal hygiene tasks in a bathroom/shower facility. The videos appear to have been recorded in a surreptitious manner in that they are all recorded through the opening of a ventilation unit and the females appeared unaware they are being observed. The digital image file depicts a female in the same bathroom/shower facility.

The videos and images were originally submitted as an enclosure to the stipulation of fact, but were ultimately admitted separately as Pros. Ex. 2. Upon examination of the videos and image described above, we discover that four of the thirteen videos contain images that qualify for criminal liability under Article 120, UCMJ. Three videos contain images of certain females' areolae and nipples, one of these also contains display of a female's genitalia and the fourth contains image of a buttock. A fifth video may qualify but it is difficult to discern. The remaining eight videos and the still image display nothing listed under the definition of indecent conduct provided under the 2007 version of Article 120(t)(12), UCMJ.

## LAW

"The requirements of Article 45 are designed to provide protection to the accused from entering an unknowing, unwitting, or coerced plea of guilty; the requirements of *United States v. Care*, [18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969)], are designed to provide reviewing authorities, including [courts of appeal], with an objective test to measure the understanding of the accused at the time of the plea."

*United States v. Pretlow*, 13 M.J. 85, 88–89 (C.M.A. 1982). Upon review, "a guilty plea will be rejected only where the record of trial shows a substantial basis in law and fact for questioning the plea." *United States v. Aleman*, 62 M.J. 281, 283 (C.A.A.F. 2006) (quoting *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005)).

We review a judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citing *United States v. Inabinette*, 66 M.J. 320, 321 (C.A.A.F. 2008)). A judge can abuse his discretion if he accepts a guilty plea "without an adequate factual basis to support it" or if he accepts a guilty plea based upon "an erroneous view of the law." *Id.* (citing *Inabinette*, 66 M.J. at 321–22).

A judge must question an accused regarding the factual predicate of any charged offense to ensure that "the acts or the omissions of the accused constitute the offense to which he is pleading guilty." *United States v. Bullman*, 56 M.J. 377, 380 (C.A.A.F. 2002) (quoting *Care*, 18 U.S.C.M.A. at 541, 40 C.M.R. at 253) (internal punctuation marks omitted). Rule for Courts-Martial 910(e) requires the military judge to determine if the factual predicate elicited during the providence inquiry objectively supports the guilty plea. *Bullman*, 56 M.J. at 380–81.

Further, a judge must explain the elements of the charged offense to an accused. *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003). "If the military judge fails to do so, he commits reversible error, unless 'it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.'" *Id.* (quoting *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992)). This court reviews the entire record to determine if an accused was aware of the elements of the charged offense. *Id.* "If an accused's admissions in the plea inquiry do not establish each of the elements of the charged offense, the guilty plea must be set aside." *Weeks*, 71 M.J. at 46 (citing *United States v. Gosselin*, 62 M.J. 349, 352–53 (C.A.A.F. 2006)).

"The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts. *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *Care*, 18 U.S.C.M.A. at 538–39, 40 C.M.R. at 250–51).

## DISCUSSION

Here government and defense counsel permitted, and the military judge accepted, appellant's plea of guilty to violations of Article 120, UCMJ, on an erroneous view of the law, an incorrect definition of the crime, and factual admissions that fall short of that required to find a plea of guilty provident.

Congress added voyeurism of a particular sort as an indecent act under Article 120, UCMJ, when it overhauled that article under the UCMJ in 2007.  Prior to that, voyeurism, or peeping, was potentially cognizable as a crime only under Article 134, UCMJ, as a simple disorder.  *See United States v. McDaniel*, 39 M.J. 173, 174–75 (C.M.A. 1994); *United States v. Webb*, 38 M.J. 62, 64, 69 (C.M.A. 1993); *United States v. Foster*, 13 M.J. 789, 796–97 (A.C.M.R. 1982); *United States v. Johnson*, 4 M.J. 770, 771–72 (A.C.M.R. 1978); see also *Webb*, 38 M.J. at 70 (Gierke, J., concurring in part and dissenting in part).

With the promulgation of the 2007 version of Article 120, UCMJ, those offenses previously contemplated under *Manual for Courts-Martial*, *United States* (2005 ed.) [hereinafter *MCM*], pt. IV, ¶ 90, Article 134, UCMJ, Indecent acts with another, were now subject to prosecution under Article 120(k), UCMJ, Indecent Act. *See MCM*, 2008, pt. IV analysis at A23–14 & 15.  Congress also added voyeurism, involving the observation and/or recording of particular body parts or particular acts, as an indecent act under Article 120, UCMJ.  Voyeurism that does not involve the body parts or specific acts listed under Article 120(t)(12), UCMJ, would, therefore, remain a potential violation of Article 134, UCMJ, as a simple disorder.

The record indicates that the military judge and parties in this case agreed upon a view that Congress had listed voyeurism, as it did, only as an example of what might constitute an indecent act.  The inherent difficulties associated with interpretation of this particular statute are manifest and parties and judges continue to address the challenge in good faith.  With regard to voyeurism, recognition of the history of the common law, as described above, conjoined with the nature of the consolidation of offenses under Article 120, UCMJ, that were previously defined under Article 134, UCMJ, establishes that the interpretation employed in the court-martial here was incorrect.

Application of certain fundamental principles of statutory construction also reveals this error.  "Ordinarily, where a specific [statutory] provision conflicts with a general one, the specific governs."  *Edmond v. United States*, 520 U.S. 651, 657 (1997) (citation omitted).  Here, then, the specific provisions addressing voyeurism under the 2007 version of Article 120(t)(12), UCMJ, define the limits of that statute's reach over that sort of peeping behavior.  *See id.*  In addition, "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Busic v. United States*, 446 U.S. 398, 406 (1980) (citations omitted).  Therefore, if any ambiguity exists, the 2007 version of Article 120(k), UCMJ, necessarily considered in conjunction with Article 120(t)(12), UCMJ, limits criminal liability under that article for voyeurism to those specific situations listed.  *See id.*

The military judge in this case never correctly defined the offense as required. Rather than employ the specific definition required, he resorted to the general definition alone.  The judge did not advise appellant that to constitute "indecent

conduct," his surreptitious observation or recording of females in the shower areas must include the viewing of another person's genitalia, anus, buttocks, areola, or nipple, or involved the viewing of another person engaged in a sexual act, sodomy, or sexual contact. Appellant neither expressed any understanding consistent with the specific definition of the crime required nor uttered facts sufficient to meet that definition. Indeed, appellant pled guilty to the 2007 version of Article 120(k), UCMJ, violations based upon conduct for which it is impossible to be convicted under that statutory provision.

In Specification 2 of Charge I, eight of the thirteen recordings certainly fall completely outside the scope of the crime in question. Yet the judge advised and appellant erroneously understood that all were equally subject to prosecution, conviction and punishment under Article 120(k), UCMJ. In Specification 3 of Charge I, the stipulation of fact establishes that appellant observed a female soldier in t-shirt and panties—facts that fall well short of those required to support a plea of guilty in this case. In the specifications of Charge II, appellant never uttered facts that satisfy the requirement of the statute and he acknowledged guilt only in the context of the erroneous definition initially rendered and repeated by the military judge.

Stating that he observed or intended to observe or record naked or partially naked women is not enough. Both terms are sufficiently ambiguous to render them practically meaningless under the strictures of the statute in question.[3] As our court "is confined to the definitions formulated by Congress," we enforce the specific definition of the element of the offense here at issue. *See United States v. Wilkins*, 71 M.J. 410, slip op. at 7 (C.A.A.F. 16 Nov. 2012).

The legislature's explicit exclusion of conviction under Article 120, UCMJ, based on simply viewing a naked person, has also since been amplified: Congress amended the provisions addressing voyeurism effective 28 June 2012. *See* 10 U.S.C. § 920 (2006 & Supp. V 2011). Article 120c, UCMJ, now criminalizes, among other surreptitious activities, those instances where a soldier, without legal justification or lawful authorization, "knowingly photographs, videotapes, films, or records by any means the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy." *MCM*, 2012, pt. IV, ¶ 45c.a(a)(2). "Private area" is defined as "the naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple." *MCM*, 2012, pt. IV, ¶ 45c.a(c)(2). Congress could quite readily make peeping upon a naked

---

[3] Reality also informs us that one can peep upon a naked or partially naked person but not view any of the parts listed in the statute. Any number of possibilities exist where an accused could observe a naked person but not violate Article 120, UCMJ, because his view is obscured in some fashion or because of his particular vantage point, for example. We need not belabor the point.

person a violation of Article 120, UCMJ.  It hasn't; rather, it made observation of particular naked parts as criminal under that statute.

Though the accused most certainly committed a simple disorder under Article 134, UCMJ, and sufficiently admitted to same at court-martial, he was neither charged with that offense nor is that offense a lesser-included offense of the Article 120, UCMJ, offense levied.  *See United States v. Morton*, 69 M.J. 12, 13–16 (C.A.A.F. 2010) (abrogating the "closely related offense" doctrine and holding that "[a]ffirming a guilty plea based on admissions to an offense to which an accused has not in fact pleaded guilty and which is not a lesser[-]included offense of the charged offense is inconsistent with traditional due process notions of fair notice."); *see also United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010).

During the providence inquiry, appellant never articulated the facts necessary to establish that he observed or recorded another person's genitalia, anus, buttocks, areola, or nipple, or seeing a person engaged in a sexual act, sodomy, or sexual contact or that he understood that was required in order to be guilty under the offenses charged.  The videos admitted as Pros. Ex. 2 should not be considered admissions of the accused as the judge actually removed them from the stipulation of fact and obtained no acceptance from the accused that they constituted factual admissions by him.[4]  Even if the videos were included as stipulations of fact, we resolve that, under the circumstances of this case, any such admission would be insufficient to accept that portion of appellant's plea of guilty concerned where, as in this case, appellant's misunderstanding of the law and its relation to the facts establish a substantial basis in law and fact to reject the plea.  *See Weeks,* 71 M.J. at 46; *Medina*, 66 M.J. at 26; *Pretlow*, 13 M.J. at 88–89; *see also Bullman*, 56 M.J. at 382–83.  We do not review the record of a guilty plea to determine whether the government could prove the case in a contested trial or whether the accused could have been provident if properly advised.  We review the record to determine if the plea was in fact and law provident.  *See* UCMJ art. 45; *Medina*, 66 M.J. at 27; *Pretlow*, 13 M.J. at 88–89; *Care*, 18 U.S.C.M.A. at 541, 40 C.M.R. at 253.

A plea based on an erroneous view of the law where appellant's admissions did not establish an essential element of the offense warrants rejection.[5]  *See Weeks,*

---

[4] As noted above, the stipulation itself falls short of the factual admission required to uphold a guilty plea in this case.

[5] As we are confined by the definitions formulated by Congress, we are similarly confined to that which is objectively verifiable in the record to determine whether an appellant was properly advised on matters of law.  *See Henderson v. Morgan*, 426 U.S. 637, 646–47 (1976) (holding a guilty plea involuntary where the record

(continued . . .)

71 M.J. at 48–49. The sentence imposed and approved is concomitantly unreliable in light of all of the circumstances of this case and the matter warrants rehearing. *See United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

## CONCLUSION

On consideration of the entire record, the findings of guilty of Specifications 2-3 of Charge I and Specification 1 of Charge II are set aside. In addition, the court finds in relation to Specification 2 of Charge II only so much of the finding of guilty that states appellant "did, on or about 13 August 2009, unlawfully enter a female locker and shower room, the property of the United States Government, with intent to commit a criminal offense, to wit: a violation of Article 120, UCMJ, Indecent Exposure, therein," in violation of Article 130, UCMJ, should be approved. UCMJ art. 66; *Inabinette*, 66 M.J. 320. The remaining findings of guilty are affirmed. The same or a different convening authority may order a rehearing on Specifications 2-3 of Charge I and Specification 1 of Charge II and the sentence, which is set aside. The same or a different convening authority may also order a rehearing on the part of Specification 2 of Charge II that is set aside. If the convening authority determines that a rehearing on Specifications 2-3 of Charge I, Specification 1 of Charge II, and part of Specification 2 of Charge II is impracticable, he may dismiss Specifications 2-3 of Charge I, Specification 1 of Charge II, and part of Specification 2 of Charge II and order a rehearing on the sentence only for the remaining offenses. *See United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006); *Sales*, 22 M.J. 305.

Senior Judge YOB concurs.

AYRES, Chief Judge, concurring in part and dissenting in part:

I agree with the majority that the military judge committed reversible error in accepting appellant's guilty plea to Specification 3 of Charge I. As stated by the majority, the overhaul of Article 120, UCMJ, in 2007 to include adding voyeurism as an indecent act was meant to limit such activity to viewing the naked and defined specific body parts enumerated in Article 120(t)(12)(A), UCMJ, or the activities described in Article 120(t)(12)(B), UCMJ. In the present case, Specification 3 of Charge I alleged the victim was "partially naked . . . while she was dressing in a female shower," the stipulation of fact states the victim was "wearing only a t-shirt

---

(. . . continued)
established that neither judge nor defense counsel explained to the accused an essential element of the offense and where the accused did not sufficiently admit to such element); *Pretlow*, 13 M.J. at 88. Our system of military justice stands in contradiction to presumption in guilty pleas. *See Care*, 18 U.S.C.M.A. at 541, 40 C.M.R. at 253.

and panties," and during the inquiry the military judge failed to establish the appellant saw the victim's genitalia, anus, buttocks, areola, or nipple. Neither the facts provided in the record nor the facts alleged in Specification 3 of Charge I are sufficient to support the guilty plea to this specification.

I concur with the majority's disposition of Specification 2 of Charge II. Here the military judge elicited from appellant that he entered the shower room "to view females who were *partially* naked." (emphasis added). Without more, the providence inquiry fails to show appellant entered the female shower room to view anyone's genitalia, anus, buttocks, areola, or nipple, as required by Article 120(t)(12)(A), UCMJ. For that reason, I too would affirm only so much of the finding of guilt of Specification 2 of Charge II as alleged appellant "did, on or about 13 August 2009, unlawfully enter a female locker and shower room, the property of the United States Government, with intent to commit a criminal offense, to wit: a violation of Article 120, UCMJ, Indecent Exposure, therein."

With respect to Specification 2 of Charge I and Specification 1 of Charge II, I part company with the majority's view of facts and law. As our superior court succinctly explained in *United States v. Redlinski*, 58 M.J. 117 (C.A.A.F. 2003):

> For this Court to find a plea of guilty to be knowing and voluntary, the record of trial 'must reflect' that the elements of 'each offense charged have been explained to the accused' by the military judge. *United States v. Care*, 18 C.M.A. 535, 541, 40 C.M.R. 247 (1969). *See* Art. 45(a), UCMJ, 10 U.S.C. § 845(a) (2002); R.C.M. 910(c)(1). If the military judge fails to do so, he commits reversible error, unless 'it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.' *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992). Rather than focusing on a technical listing of the elements of an offense, this Court looks at the context of the entire record to determine whether an accused is aware of the elements, either explicitly or inferentially. *Id*.; *United States v. Pretlow*, 13 M.J. 85, 88 (C.M.A. 1982); *United States v. Kilgore*, 21 C.M.A. 35, 37, 44 C.M.R. 89 (1971).

*Redlinski*, 58 M.J. at 119. While the military judge failed to complete the definition of Article 120(t)(12), UCMJ, as explained by the majority, the providence inquiry satisfies me that in the context of this entire guilty plea, appellant was fully aware of each and every element of Specification 2 of Charge I and Specification 1 of Charge II, that his intent was to view, photograph, and make recordings of women who were

completely naked, and as such, had the requisite intent to view their genitalia, anus, buttocks, areola, and/or nipples. It is impossible for me to infer otherwise.

Before rejecting a guilty plea during appellate review, we must be convinced that the court-martial record evidences a substantial basis in law, in fact, or both, for questioning such a plea. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). Here appellant recounted the facts associated with his criminal behavior while exhibiting a sufficient understanding of how the elements of both Specification 2 of Charge I and Specification 1 of Charge II related to those facts. *See United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 18 U.S.C.M.A. 535, 538–39, 40 C.M.R. 247, 250–51 (1969)). In at least four of the thirteen recordings that form the basis for Specification 2 of Charge I, the evidence positively shows and the majority agrees that appellant could and did see and record women who were naked. Appellant's plea of guilty, with the assistance of presumptively qualified defense counsel,[1] confirms this finding. Nothing within the record rebuts an assumption that appellant was able to take full advantage of his counsel's advice and was able to understand how his actions related to the elements of the offenses charged.[2] The failure of appellant to recite on the record that he observed the "genitalia, anus, buttocks, and areola or nipple" of a completely naked woman of which he had a full view does not require this court to reject his plea.

Similarly, appellant's admission during the providence inquiry to Specification 1 of Charge II that he unlawfully "entered the female shower trailer located on FOB Rustamiyah [Iraq] . . . [t]o view naked females" convinces me that his plea was knowing and with the requisite intent to commit the criminal offense of indecent act.

A determination that the victims were "naked" does not require further definition here when viewed reasonably. If the victims were "naked," it is apparent to a reasonable mind that at least one of the enumerated body parts from the definition in Article 120(t)(12)(A), UCMJ, would have been visible. While one may argue that images in popular culture allow "naked" women to pose in such a way as to avoid displaying any of the enumerated body parts, it is crucial to note the distinction here that unwitting victims are neither static nor posed images. It is unlikely that such victims might have been able to contort their bodies in such a way

---

[1] *See Henderson v. Morgan*, 426 U.S. 637, 647 (1976) ("it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.").

[2] Appellant had a GT score of 122.

as to prevent observation of the enumerated body parts, especially when unaware of appellant's presence.

The majority's view is that all participants in this court-martial (trial counsel, defense counsel, and military judge alike) as well as both government and defense appellate counsel in their briefs, collectively failed to adequately appreciate the necessary definitions of the offenses in Specification 2 of Charge I and Specification 1 of Charge II. I believe common sense requires, and the precedent cited in *Morgan* permits, a more reasonable and optimistic view of our military justice system. *See Henderson v. Morgan*, 426 U.S. 637, 647 (1976). The decision of the military judge, to truncate the definition as he read it, was as likely a consequence of the overwhelming nature of the evidence as a speculatively erroneous view of the law. Although I agree that a more explicit discussion of the definitions during the providence inquiry would have been helpful, in this case the overwhelming evidence included in both the stipulation of fact, as well as in the video evidence included with that stipulation, demonstrate that appellant was well-informed of the nature of the offense, thereby making his plea a "knowing" plea of guilty as required by *Care*. *See Care*, 18 U.S.C.M.A. at 541, 40 C.M.R. at 253.

Appellant's guilty pleas to Specification 2 of Charge I and Specification 1 of Charge II were both knowing and voluntary. While I find no substantial basis to reject his plea, I would affirm only so much of Specification 2 of Charge I as finds appellant "did, at or near Forward Operating Base Rustamiyah, Baghdad, Iraq, on divers occasions between on or about 1 January 2009 and 31 January 2009, wrongfully commit indecent conduct, to wit: observing and making digital recordings of naked women while they conducted hygiene tasks and dressed in a female shower trailer."

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court