# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist LAZARO J. RODRIGUEZ**
**United States Army, Appellant**

ARMY 20160799

Headquarters, Fort Riley
J. Harper Cook, Military Judge
Colonel Warren L. Wells, Staff Judge Advocate

For Appellant: Major Brendan R. Cronin, JA; Captain Meghan E. Mahaney, JA (on brief); Lieutenant Colonel Tiffany D. Pond, JA; Major Jack D. Einhorn, JA; Captain Benjamin J. Wetherell, JA (on reply brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Virginia H. Tinsley, JA; Major Ian M. Guy, JA (on brief).

19 December 2018

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curiam:

While having sexual intercourse, FR looked over and saw appellant crouching by the side of the bed watching her. This was disturbing as she thought she was having sex with appellant. Instead, the person on top of her was Private First Class (PFC) George T. Torresjimenez, a man who appellant had snuck into her home. She was not OK with that. Upon the ruse being discovered, appellant and PFC Torresjimenez fled.

The military judge sitting as a general court-martial convicted appellant, contrary to his plea, of sexual assault by bodily harm in violation of Article 120(b)(1)(B), Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [UCMJ], as a principal under Article 77, UCMJ. The military judge sentenced appellant to be dishonorably discharged from the Army, to four years confinement, and reduction to

the grade of E-1.[1]  Appellant appeals his conviction, asserting that the military judge applied the wrong *mens rea* in determining his guilt.

## BACKGROUND

We make the following findings of fact.[2]   Appellant and FR had previously dated and had consensual sexual intercourse.  By contrast, PFC Torresjimenez had never met or spoken to FR.

On the night of 23-24 October 2015, appellant and PFC Torresjimenez were looking for a place to crash after a night out.  Appellant showed PFC Torresjimenez a text message from FR.  Using highly colorful language, the message from FR strongly indicated her desire to have sexual intercourse with appellant.

After appellant showed the message to PFC Torresjimenez, appellant told him, "We can both have sex with her, and we can stay [at FR's residence] tonight."  Appellant did not consult with FR regarding his plan for PFC Torresjimenez to have sex with her.

Indeed, after finishing a work shift, FR had spent the night out with her roommate Courtney.  Later, she arrived at her home tired and intoxicated.  She got sick as Courtney parked the car in front of the house and ended up falling asleep in the bathroom.  Courtney brought her a pillow and blanket to make her comfortable.

Later in the evening, appellant and PFC Torresjimenez arrived at FR's house.  Appellant exited the car and indicated for PFC Torresjimenez to wait in the vehicle.  Appellant knocked on the door until Courtney answered and let him in.  Courtney

---

[1] The military judge credited appellant with thirty-eight days against the sentence of confinement.  The convening authority approved the sentence as adjudged and credited appellant with thirty-eight days of confinement credit.

[2] Our factual summary reflects our credibility assessment of the witness testimony, our weighing of controverted questions of fact, and our assessment of reasonable inferences we draw from the evidence.  *See* UCMJ art. 66(c).  We find FR's roommate, Courtney, to be a highly credible witness.  Private First Class Torresjimenez testified for the government under a grant of immunity.  His testimony was credible when describing everything but the events immediately preceding the offense and the offense itself.  We assess FR's testimony as honest, although reflecting omissions and confusion resulting from her intoxication and fatigue.  Appellant's testimony regarding the offense was not credible.

told appellant that FR was in the bathroom. Appellant picked up FR and carried her into her bedroom.

After Courtney had returned to her own bedroom, appellant opened the back door, and went outside to the car. Appellant indicated to PFC Torresjimenez that FR had approved of the plan and told him that they were "good to go." Appellant then brought PFC Torresjimenez to FR's bedroom. FR's room was dark except for some illumination coming through the window from outside.

Private First Class Torresjimenez began having sexual intercourse with FR.[3] Given her fatigue and intoxication, FR had the sense of being penetrated, but having heard appellant's voice, believed she was having sex with appellant.

FR's belief that she was having sex with appellant was shattered when, partially illuminated from light outside, she saw appellant crouching next to the bed. Then FR reacted.

The extent of FR's reaction was disputed at trial, but it was at least sufficient to rouse her roommate to her aid and to send appellant scurrying back to his car. In his hurry to exit, appellant left one of his shoes. Courtney confronted PFC Torresjimenez and asked him who he was and why he was in her house. Although she did not know PFC Torresjimenez, she would later correctly identify him by a large tattoo on his chest. Appellant later attempted to come back in the house to get his shoe, but was forced out. FR reported the assault to local police that same morning. Months later, DNA analysis of swabs taken from her anus, labia and cervix would confirm FR's account that PFC Torresjimenez was the individual having sex with her.

Once in the car, appellant told PFC Torresjimenez that they were both in trouble. In recorded phone calls appellant conceded PFC Torresjimenez had "raped" FR. During the conversation appellant was read a text message from Courtney

---

[3] Appellant also claims that the evidence is insufficient to support the conviction. After taking into account that the trial court saw and heard the evidence, we find the government has satisfied its high burden of showing that appellant acted as a principal when he encouraged, facilitated, and caused PFC Torresjimenez's sexual assault of FR. Appellant's pre-offense actions of telling PFC Torresjimenez that FR would consent to a three-some, his surreptitious sneaking of PFC Torresjimenez into the house, his knowledge of FR's state after carrying her from the bathroom to the bedroom, and his post-offense actions and statements showing a consciousness of guilt, all support the necessary inferences to support the conviction.

outlining the allegation. Conscious of his own guilt, appellant described his situation as "fucked," said, "I'm going to jail," and stated he needed to move to Mexico.

## LAW AND DISCUSSION

Appellant was found guilty as a principal by means of Article 77, UCMJ. Article 77, UCMJ, has two subsections. The first states that any person who "[a]ids, abets, counsels, commands, or procures" the commission of an offense will be a principal. UCMJ art. 77(a)(1). The second subsection, states that anyone who "causes an act to be done which if directly performed by him would be punishable" is also a principal. UCMJ art. 77(a)(2). Almost all of our superior court's case law appears to have focused on the first subsection. *See generally United States v. Simmons*, 63 M.J. 89 (C.A.A.F. 2006); *United States v. Richards*, 56 M.J. 282 (C.A.A.F. 2002); *United States v. Thompson*, 50 M.J. 257 (C.A.A.F. 1999).

Appellant complains on appeal that the military judge used the wrong *mens rea* when determining his guilt. Appellant persuasively asserts that when: (1) the government charges sexual assault by bodily harm; and (2) the bodily harm alleged is the act of penetration, the government must prove beyond a reasonable doubt that the accused at least acted with a reckless disregard to whether the victim was consenting to the sexual act.[4] *See generally Elonis v. United States*, 135 S. Ct. 2001 (2015); *United States v. Gifford*, 75 M.J. 140 (C.A.A.F. 2016) (general order violation requires recklessness); *United States v. Battles*, ARMY 20140399, 2017 CCA LEXIS 380, at * 32-35 (Army Ct. Crim. App. 31 May 2017) (mem. op.) (Wolfe J. concurring).

This is not the first time this court has been asked to address this issue. To date, however, claims regarding the proper *mens rea* for sexual assault have been forfeited at trial, and we have not found that any error amounted to plain error. *See generally United States v. Flournoy*, ARMY 20160451, 2018 CCA LEXIS 58 (Army Ct. Crim. App. 8 Feb. 2018) (summ. disp.), *pet. denied*, 77 M.J. 414 (C.A.A.F.

---

[4] The government argues that only a general intent to commit the offense is required. We note that the "bodily harm" necessary to commit sexual assault under Article 120, UCMJ, does not require the use of unlawful force or violence. *Compare* Article 128, UCMJ, *with* Article 120, UCMJ. Nor does the definition of "bodily harm" under Article 120, UCMJ, require "physical pain" or "injury to the body" or other unequivocally wrongful conduct that might provide greater support for the conclusion that only a general intent is required to commit the offense. *See, e.g.,* 18 U.S.C. § 113 (assaults within the special maritime and territorial jurisdiction of the United States); and 18 U.S.C. § 1365 (tampering with consumer products).

RODRIGUEZ—ARMY 20160799

2018); *United States v. Woolsey*; Army 2017 CCA LEXIS 668 (Army Ct. Crim. App. 24 Oct. 2017) (summ. disp.). However persuasive appellant's arguments are in a vacuum, here it is again unnecessary for us to definitively decide the question.

To be guilty of sexual assault as a principal under Article 77, UCMJ, "[t]he law requires that it be established that there is a concert of purpose or the aiding or encouraging of the commission of the criminal act and a conscious sharing of the criminal intent . . . ." *United States v. Pritchett*, 31 M.J. 213, 216 (C.A.A.F. 1990). The elements of aiding or abetting an offense requires proof of "the specific intent to facilitate the commission of a crime by another . . . ." *Id.* at 217 (citation omitted). At trial, the defense's closing argument specifically highlighted the government's burden to prove the accused's intent.

Given the specific *mens rea* required to convict appellant as a principal, this case falls outside of the Supreme Court's decision in *Elonis*. Simply put, if the government has proven that the accused acted with a specific criminal intent, we need not apply a reckless *mens rea* to separate innocent from wrongful conduct.

## CONCLUSION

On consideration of the entire record, the findings and sentence are AFFIRMED.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

5